NOLAN HELLER KAUFFMAN LLP
Marco B. Koshykar, Esq.
*Attorneys for Berkshire Bank*
80 State Street, 11th Floor
Albany, New York 12207
(518) 449-3300
mkoshykar@nhkllp.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re,<br><br>CELL-NIQUE CORPORATION,<br><br>Debtor. | Chapter 11<br>Case No. 24-10508 (REL) |

**MOTION BY BERKSHIRE BANK FOR AN ORDER PROHIBITING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2), COMPELLING DEBTOR TO ACCOUNT FOR CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 AND GRANTING MOVANT ADEQUATE PROTECTION AND/OR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §361 AND 362(d)**

Berkshire Bank ("**Berkshire**" or the "**Movant**"), by and through its counsel, Nolan Heller Kauffman LLP, hereby submits this motion for an Order: (1) prohibiting the Debtor's use of Berkshire's cash collateral pursuant to 11 U.S.C. §363(c)(2), (2) compelling the Debtor to account for such cash collateral use pursuant to 11 U.S.C. §363, (3) granting Berkshire adequate protection pursuant to 11 U.S.C. §§361 and 362, and/or (4) granting Berkshire relief from the automatic stay pursuant to 11 U.S.C. §362 and, in support thereof, respectfully states the following:

**Parties and Jurisdiction**

1. Berkshire is a Massachusetts banking corporation with its principal office in the State of New York located at 30 South Pearl Street, Albany, New York.

2. Cell-Nique Corporation (the "**Debtor**") is a Delaware corporation that filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§101 *et seq*. (the "**Bankruptcy Code**") on May 9, 2024, thereby commencing the above-captioned bankruptcy case and invoking the

automatic stay provisions of Bankruptcy Code §362(a).

3. This Court has jurisdiction over this bankruptcy case and this motion pursuant to 28 U.S.C. §§157 and 1334. This motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b).

**Background**

4. As this Court is aware, the Debtor's prior chapter 11 case (Case No. 23-10815; filed on August 10, 2023 – the "**Prior Bankruptcy Case**") was dismissed by an Order of Dismissal dated April 19, 2024, due to the Debtor's repeated failures to abide by its duties as a debtor-in-possession.

5. The Debtor subsequently filed the instant chapter 11 case twenty (20) days after dismissal of its Prior Bankruptcy Case to prevent secured creditors, such as Berkshire, from exercising their state court rights and remedies with respect to liquidation of collateral.

6. As was established in the Prior Bankruptcy Case, Berkshire is the holder of a pre-petition perfected security interest in and lien on all of the Debtor's personal property, including without limitation its equipment, accounts receivable, inventory and general intangibles (collectively, the "**Collateral**") by reason of, among other things, (a) that certain U.S. Small Business Administration Note dated September 21, 2017 in the original maximum principal amount of $2,150,000.00 (the "**$2,150,000 Note**"), (b) that certain U.S. Small Business Administration Note dated September 21, 2017 in the original maximum principal amount of $325,000 (the "**$325,000 Note**" and, together with the $2,150,000 Note, the "**Notes**" or the "**Loans**"), (c) that certain Security Agreement dated September 21, 2017 (the "**Equipment Security Agreement**"), and (d) that certain second Security Agreement dated September 21, 2017 (the "**General Security Agreement**" and, together with the Equipment Security Agreement, the "**Security Agreements**").

7. The Loans are guaranteed by non-debtors Cell-Nique Corporation (a New York corporation), Hudson River Foods Corporation, Living Harvest, Inc., PCC Castleton Corporation, Physicians Capital Corporation, Daniel Ratner and Donna Ratner (the "**Guarantors**" and, together with the Debtor, the "**Obligors**") by reason of certain Unconditional Guaranties each dated September 21, 2017 (the "**Guaranties**").[1]

8. Berkshire's security interest was perfected by the filing of a UCC Financing Statement with the Delaware Department of State (that being the State of the Debtor's incorporation) on October 25, 2021 as Filing No. 20218535578.

9. On March 27, 2023, a Judgment upon Order was granted in the Albany County Supreme Court action captioned "*Berkshire Bank v. Cell-Nique, Corporation, et al.*", bearing Index No. 903030-2022, in favor of Berkshire against all Obligors in the aggregate amount of $2,004,176.75 due and owing to Berkshire on the Loans, plus interest at the statutory rate of interest of 9% until paid in full (the "**Judgment**"). The Judgment was transcribed to the Rensselaer County Clerk's Office and has become a lien on all property owned by the Obligors in Rensselaer County.

10. Copies of the Notes, the Security Agreements, the Guaranties, the UCC Financing Statement and the Judgment are attached as Exhibit "A" to the Proof of Claim filed by Berkshire in this case. (*See* Claim No. 4, filed on May 20, 2024).

11. By reason of the foregoing, Berkshire holds a perfected pre-petition security interest in and lien on, among other things, all accounts receivable generated by the Debtor and

---

[1] The $2,150,000 Loan is also partly secured by a collateral security mortgage lien encumbering the personal residence of the Debtor's principal and one of Berkshire's Guarantors, Daniel Ratner.

proceeds thereof, which are considered "cash collateral" within the meaning of Bankruptcy Code §363.[2]

12. As of May 20, 2024, the balance due and owing to Berkshire on account of the Judgment was approximately $2,243,030.31 pursuant to the Proof of Claim filed by Berkshire in this case. (*See* Claim No. 4).

## Relief Requested

13. Berkshire now moves for an order (a) prohibiting the Debtor's use of Berkshire's cash collateral pursuant to 11 U.S.C. §363(c)(2), (b) compelling the Debtor to account for its use of cash collateral pursuant to 11 U.S.C. §363, (c) granting Berkshire adequate protection pursuant to 11 U.S.C. §§361 and 362, and/or (d) granting Berkshire relief from the automatic stay pursuant to 11 U.S.C. §362.

14. A debtor's ability to use cash collateral is conditioned by 11 U.S.C. §363(c)(2), which provides that "the [debtor or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless: (A) each entity that has an interest in such cash collateral consent; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." The Debtor has the burden of proof to show that it has provided adequate protection to Berkshire. *See* 11 U.S.C. §363(p)(1).

15. The Debtor continues to be in default of its obligations to Berkshire pursuant to the terms of the Notes and the Security Agreements. Upon information and belief, the Debtor continues to operate its food manufacturing business, thus obtaining cash collateral in the form of accounts receivable and proceeds thereof during the pendency of this case.

---

[2] Pursuant to several Stipulations and Interim Orders Authorizing the Debtor's Use of Cash Collateral entered in the Prior Bankruptcy Case, the Debtor has ratified and acknowledged Berkshire's pre-petition security interest in and to the Collateral and all its Loan Documents.

16. The Debtor has not moved for an order seeking Berkshire's consent to use cash collateral, nor has Berkshire agreed to the Debtor's use of the cash collateral. Further, the Court has not entered an order conditioning the use of Berkshire's cash collateral or in any way provided for the adequate protection of Berkshire's security interest in the Debtor's cash collateral.

17. By e-mail dated May 9, 2024, Berkshire's counsel notified the Debtor and its counsel that Berkshire did not consent to the Debtor's use of cash collateral. By e-mail dated May 10, 2024, Berkshire's counsel outlined to the Debtor and its counsel certain terms and conditions pursuant to which Berkshire would agree to consent to use of cash collateral. In response, the Debtor provided to Berkshire a proposed Budget and 13-week cash flow statement.

18. On May 13, 2024, Berkshire's counsel circulated to the Debtor and its counsel a proposed Stipulation and Interim Order Approving the Debtor's Use of Cash Collateral (the "**Proposed Cash Collateral Stipulation**"). The Proposed Cash Collateral Stipulation requires the Debtor to, among other things, (a) transition its deposit account relationships from Berkshire (which is not an authorized depository bank for debtor-in-possession accounts by the United States Trustee's Office) to another Bank,[3] and (b) provide Berkshire with proof of flood insurance coverage respecting its Collateral.[4] The Proposed Cash Collateral Stipulation further limits the Debtor's ability to initiate wire transfers from the existing Berkshire deposit accounts to $35,000.[5]

19. By response e-mail dated May 13, 2024, the Debtor's principal, Daniel Ratner, replied that "We don't have Flood Ins. Berkshire had covered Flood Ins. the few yrs." In other

---

[3] The Debtor's DIP account in the Prior Bankruptcy Case was held at TD Bank. Berkshire has requested that Berkshire's continued security interest in cash collateral held at TD Bank be secured and perfected with a Deposit Account Control Agreement. This same request was made of the Debtor in the Prior Bankruptcy Case, but the Debtor failed to comply.

[4] The Debtor's property is located within Special Flood Hazard Area A according to FEMA.

[5] On May 10, 2024, Berkshire rejected a request by the Debtor to wire funds to the IRS due to insufficient funds in the Debtor's deposit account. The Debtor subsequently deposited sufficient funds to make that payment to the IRS.

words, the Debtor has not procured its own flood insurance on the Collateral as required pursuant to the terms of Berkshire's Loan Documents but has instead been relying on Berkshire to procure its own force placed insurance on such Collateral. The Debtor is reminded that Berkshire has no obligation to maintain force placed insurance on the Collateral and the Debtor remains responsible for the cost of any such insurance procured by Berkshire. Furthermore, Berkshire's force placed insurance covers Berkshire's interest in the Collateral and may not be sufficient insurance coverage for all the Debtor's assets and property.

20. By e-mail dated May 20, 2024, Berkshire's counsel again requested that the Debtor and its counsel approve and execute the Proposed Cash Collateral Stipulation circulated on May 13, 2024. By response e-mail dated May 20, 2024, Daniel Ratner notified Berkshire and its counsel that the Debtor was soliciting quotes for flood insurance but that procuring such coverage would impose a financial hardship on the Debtor. To date, the Proposed Cash Collateral Stipulation has not been executed.

21. It is respectfully submitted that Berkshire's security interest will be irreparably harmed should the Court not enter an order prohibiting the use of such cash collateral. Absent such a prohibition, the Debtor may well use and dissipate its cash to pay its ongoing operating expenses rather than turn over such collateral to Berkshire. Clearly, the Debtor's use of cash collateral would impair Berkshire's duly perfected security interest. Accordingly, Berkshire respectfully requests an Order prohibiting use of cash collateral, requiring an accounting of cash collateral, and that Berkshire be provided with adequate protection for any cash collateral used to date.

22. In the alternative, Berkshire would consent to an order conditioning the Debtor's use of Berkshire's cash collateral to provide for Berkshire's continuing security interest

substantially in accordance with the terms and conditions set forth in Berkshire's Proposed Cash Collateral Stipulation.

23. Notably, this second chapter 11 case was filed over twelve (12) days ago, and the Debtor has made no "first day motions" or filed any schedules to its Petition despite already having the information to prepare bankruptcy schedules from its Prior Bankruptcy Case. Furthermore, the Proposed Cash Collateral Stipulation contains substantially similar terms to those executed in the Prior Bankruptcy Case. Frankly, the Debtor appears to be exhibiting similar behaviors and practices that led to the dismissal of its Prior Bankruptcy Case.

24. No prior motion for the within relief has been requested.

**WHEREFORE,** Berkshire requests that the Court enter an Order (1) prohibiting the Debtor's use of Berkshire's cash collateral pursuant to 11 U.S.C. §363(c)(2), (2) compelling the Debtor to account for such cash collateral use pursuant to 11 U.S.C. §363, (3) granting Berkshire adequate protection pursuant to 11 U.S.C. §§361 and 362, and/or (4) granting Berkshire relief from the automatic stay pursuant to 11 U.S.C. §362(d), together with such other and further relief as this Court may deem just and proper.

Dated: Albany, New York
May 22, 2024

Respectfully submitted,

NOLAN HELLER KAUFFMAN LLP

By: */s/ Marco B. Koshykar*
Attorneys for Berkshire Bank
80 State Street, 11th Floor
Albany, New York 12207
(518) 449-3300
mkoshykar@nhkllp.com

NH2024-2106082335-784756