UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

**CELL-NIQUE CORPORATION,**

                              Debtor.

_____

Case No. 24−10508−1
Chapter 11

In re:

HODGSON MILL CORPORATION,

                              Debtor.

_____

Case No. 24−10702-1
Chapter 11

In re:

HUDSON RIVER FOODS CORPORATION,

                              Debtor.

_____

Case No. 24-10775-1
Chapter 11

In re:

DANCING DEER CORPORATION,

                              Debtor.

_____

Case No. 24−10667-1
Chapter 11

**DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING (I) THE
SUBSTANTIVE CONSOLIDATION OF THEIR CHAPTER 11 CASES AND (II)
THE CASES BE JOINTLY ADMINISTERED AND (III) THAT THE
CONSOLIDATED DEBTOR BE GRANTED THE EXCLUSIVE RIGHT TO FILE
A PLAN FOR NINETY DAYS AND (IV) GRANTING RELATED RELIEF.**

TO:    **THE HONORABLE ROBERT E. LITTLEFIELD, JR.**
       **UNITED STATES BANKRUPTCY JUDGE**

The above-captioned debtors in possession (collectively, the "Debtors"), respectfully, by and through their undersigned counsel, hereby file this motion (the "Motion") seeking substantive consolidation and joint administration of the Debtors' estates and a ninety (90) day exclusive period for the consolidated Debtors to file a plan and disclosure statement. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. §§ 157 and 1334.

2.     The statutory predicates for the relief sought herein are from § 105, §1121 and §1123 of the Bankruptcy Code.

## BACKGROUND

**I.      Relevant Procedural Background**

3.     On May 9, 2024 Cell-Nique Corporation ("Cell-Nique"), the parent company filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended (the "Bankruptcy Code"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor in possession. Debtor respectfully requests this

Debtor, i.e. Cell-Nique, to be the main case for purposes of substantive consolidation and joint administration.

4. On June 14, 2024 Dancing Deer Corporation ("Dancing Deer"), filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended (the "Bankruptcy Code"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor in possession.

5. On June 21, 2024 Hodgson Mill Corporation ("Hodgson"), filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended (the "Bankruptcy Code"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor in possession.

6. On July 9, 2024 Hudson River Foods ("Hudson"), filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended (the "Bankruptcy Code"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor in possession.

## II.    Relevant Factual Background

7. Debtors are principally engaged in the business of food manufacturing.

8.      Cell-Nique is a holding company that directly owns the three (3) other Debtors. The corporate organizational chart, attached hereto as Exhibit A, shows that Cell-Nique directly owns all of the outstanding stock of Hudson, Hodgson, and Dancing Deer as subsidiaries of Cell-Nique (collectively the "Subsidiaries").

9.      As the managing parent company, Cell-Nique manages the Subsidiaries and owns the equity interests of the remaining Debtors. As detailed below, Cell-Nique and the remaining Debtors' operations and finances are closely intertwined.

10.      Cell-Nique directs the affairs of all of the Debtors. The board of directors and officers of each of the subsidiaries are completely the same as Cell-Nique. Exhibit B attached hereto provides a list of all Debtors and discloses officers, directors, and other management.

11.      All of the Debtors operate from the same principal office located at 22 Hamilton Way, Castleton, New York 12033.

12.      The Debtors also share a central management team, production assets and strategies.

13.      The Debtors' customers are billed separately by the actual Debtor entities that develop and deliver such products and services. When funds are collected by the Debtor entities, the funds are transferred up to Cell-Nique, the managing parent company, and down to either Hudson River Foods or Dancing Deer for the production costs incurred to make the finished goods sold by the Debtor.

14.    The Subsidiaries' very existence and viability depend upon their established relationship with Cell-Nique.

15.    All of the Debtors are part of a single economic unit engaged in essentially one and the same business, i.e. food manufacturing.

16.    As shown by Exhibits D-H, the motion should be granted as both secured and unsecured creditors shall benefit from the consolidation of the Debtors and the subsequent reorganization plan.  There is no dispute among secured creditors as to which assets are pledged to said secured creditors and the priority of their respective claims to the assets.  With respect to the consolidation, the Debtor will respect and acknowledge the priority of said secured creditors and the proposed plan will provide for said priority.  In a liquidation scenario, each of the separate Debtors would be unable to provide any distribution to unsecured creditors (See Exhibits D through H).  In a consolidated scenario, the Debtor has a significant likelihood of reorganizing.  The consolidation enhances the assets as it provides a manner for continued operation and an ongoing value for the consolidated business enterprise that far exceeds the liquidation values of the four (4) separate entities.  At a minimum, creditors would not be at a disadvantage, as they could receive a modest dividend from the reorganization plan, which they might not receive otherwise.  For these reasons, among others, the Debtors should be substantively consolidated, and their cases be administered jointly.

**RELIEF REQUESTED**

17.    By this Motion, Debtors respectfully request that the Court exercise its equitable powers and enter an order to substantively consolidate the Debtors for all purposes, including in connection with the solicitation of acceptance of a reorganization plan and distributions to creditors.

18.    By this Motion, Debtors additionally respectfully request that the Court enter an order, pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015, directing: (a) the joint administration of the Debtors' chapter 11 cases; and (b) parties in interest to use a consolidated caption, indicating that any pleading they file relates to the jointly administered bankruptcy cases of "Cell-Nique Corporation, et al." A proposed consolidated caption for all notices, applications, motions and other pleadings (the "Proposed Caption") is annexed as Exhibit C to this Motion. The Debtors also request that the Court find that the Proposed Caption satisfies the requirements of Rule 1015(1)(e) of the Local Rule in all respects.

19.    The Debtors further respectfully request that a docket entry be made on the docket in the chapter 11 cases of Dancing Deer Corporation, Hodgson Mill Corporation, and Hudson River Food Corporation substantially as follows: "An order has been entered in this case directing the substantive consolidation and joint administration of the chapter 11 cases of Cell-Nique Corporation, Dancing Deer Corporation, Hodgson Mill Corporation, and Hudson River Food Corporation. The docket of Cell-Nique Corporation in Case No. 24-10508-1 should be consulted for all matters affecting this case."

20.    A prior bankruptcy petition filed by Cell-Nique was dismissed, and the court

intimated, and the Debtors understood, that the prior bankruptcy of Cell-Nique presented a

confusing scenario because of the failure of the Subsidiaries to file. Debtors now request

substantive consolidation and joint administration as it would be in the best interest, not only of

the parties and creditors involved, but also for judicial efficiency.

## BASIS FOR RELIEF REQUESTED

21.    Substantive consolidation allows a bankruptcy court to consolidate the assets and

liabilities of separate legal entities and to treat those assets and liabilities as held and incurred by

a single entity. Substantive consolidation does not appear in the Bankruptcy Code, but

Bankruptcy courts have the general equitable power to order substantive consolidation. See, e.g.,

Fed. Deposit Ins. Corp. v. Colonial Realty Co., 966 F.2d 57, 59 (2d Cir.1992) (authority for

substantive consolidation comes from the bankruptcy court's general equitable powers under §

105 of the Bankruptcy Code); In re Continental Vending Mach. Corp., 517 F.2d 997, 1000 (2d

Cir.1975) (noting power to consolidate comes from equity); In re Leslie Fay Cos., 207 B.R. 764,

779 (Bankr.S.D.N.Y.1997) ("Substantive consolidation derives from the bankruptcy court's

general equitable powers provided in § 105(a) of the Bankruptcy Code."); Moran v. Hong Kong

& Shanghai Banking Corp. (In re Deltacorp, Inc.), 179 B.R. 773, 777 (Bankr.S.D.N.Y.1995)

(same); In re Richton Int'l Corp., 12 B.R. 555, 557 (Bankr.S.D.N.Y.1981) (same), 2 COLLIER

ON BANKRUPTCY ¶ 105.09[1][6], at 105–85 (L. King 15th rev. ed.2002) ("the authority of a

bankruptcy court to order substantive consolidation derives from its general discretionary equitable powers").

22.    The Bankruptcy Code itself contemplates that substantive consolidation may be used to effectuate a plan of reorganization in 11 U.S.C. § 1123(a)(5)(C).

23.    As an equitable remedy, substantive consolidation is to be used to afford creditors equitable treatment and thus may be ordered when the benefits to creditors therefrom exceed the harm suffered. Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.), 860 F.2d 515, 518-19 (2d Cir.1988).

### I. Substantive Consolidation is appropriate under the Augie/Restivo Test

24.    The Second Circuit established a test for substantive consolidation in In re Augie/Restivo Baking Co., 860 F.2d 515 (2d Cir. 1988). Under the Augie/Restivo test, substantive consolidation is warranted when (A) the creditors dealt with the debtor entities as a single economic unit and did not rely on their separate identity in extending credit or (B) the affairs of the debtors are so entangled that consolidation will benefit all creditors. Courts have found that under the Augie/Restivo test, substantive consolidation can be ordered where either prong is met based on the Second Circuit's use of the word "or." In re Republic Airways Holdings, Inc., 565 B.R. 710, 717 (Bankr. S.D.N.Y. 2017); In re 599 Consumer Elec., 195 B.R. 244, 248 (S.D.N.Y. 1996).

25.     Substantive consolidation is appropriate in these cases when analyzing the

Debtors and applying the above factors. In the present case, evidence of nearly all of the above

factors are readily apparent, demonstrating that the Debtors significantly disregarded their

corporate separateness.

**A.      Creditors dealt with the Debtors as a single economic unit**

26.      With respect to the first prong, the Augie/Restivo test requires the proponent to

show that the creditor dealt with multiple debtor entities as a single unit and did not treat them as

individual economic entities. The pertinent question for the first part of this prong is whether

creditors treated the debtors as a single entity or enterprise and not whether the debtor or the

public viewed the debtor in this manner (i.e., viewed from a creditor perspective). Republic

Airways, 565 B.R. at 717.

27.     The second part of the first prong requires the proponent to demonstrate that

creditors did not rely on the debtor's separate identity when they extended credit. This part can be

satisfied by demonstrating that the creditors that loaned funds to a separate debtor knew that the

debtor was not observing corporate formalities and was commingling funds. Windels Marx Lane

& Mittendorf, LLP v. Source Enters., 392 B.R. 541, 552-53 (S.D.N.Y. 2008).

28.     Here, there is substantial evidence to show that creditors, potential lenders, and

others, who may have known or in fact did know of the Debtors' corporate separateness,

nonetheless dealt with the Debtors as a single economic unit and did not rely on the separate

identity of either individual Debtor in extending credit or doing business with the Debtors. In fact, many of the Debtors' Secured Creditors knew of each other.

### B. The Debtors' affairs are so entangled that consolidation will benefit all creditors

29.     Under the second prong, commingling further justifies substantive consolidation where the time and expense necessary even to attempt to unscramble the debtors are so substantial as to threaten the realization of any net assets for all the creditors, or where no accurate identification and allocation of assets is possible. Augie/Restivo, 860 F.2d at 519 (citations omitted); Source Enters., 392 B.R. at 553-54. Furthermore, "[t]he language 'benefit of all creditors' does not mean each and every creditor. Rather, it means benefit to the creditor body as a whole." In re Stayton SW Assisted Living, LLC, 2009 U.S. Dist. LEXIS 119186, at *12 (D. Or. Dec. 22, 2009); see also Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC), 530 B.R. 711 (Bankr. C.D. Cal. 2015). "Substantive consolidation is premised on a sole aim: fairness to all creditors, and a cost benefit analysis is not required." Stayton SW, 2009 U.S. Dist. LEXIS 119186, at *12 (citing Bonham, 229 F.3d at 766, 67).

30.     Courts analyzing this prong consider whether the debtors shared costs and operations, failed to observe corporate formalities, or failed to act independently (when considering a parent and subsidiary) so that it would be detrimental to disentangle the operations. In re Leslie Fay Cos., 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997).

31.     Here, substantive consolidation would benefit the creditors as a whole since there is no dispute as to which secured creditors have liens on which assets and the priority thereof. The consolidation of the Debtors will recognize these secured parties and their lien positions will remain unchanged on the assets of the Debtors. If a liquidation occurred, the outcome would be similar whether there was a substantive consolidation or if each case was processed on its own as the unsecured claims would roughly amount to the same either way. Additionally, all secured lenders have continuously received consolidated statements with consolidating statements of each subsidiary.

32.     Additionally, the managing parent company, Cell-Nique, and its Subsidiaries are so intertwined, and their assets and functions are so necessary and vital to one another, that this overlap should be accounted for by way of substantive consolidation and joint administration. Cell-Nique and its Subsidiaries share operations, general accounting, machinery, and the customers they service. A prime example of this is that all of the raw material inventory is owned by Hudson and is transformed for the benefit of the other Subsidiaries.

33.     Substantive consolidation of these Debtors would not materially dilute any group of creditor claims, as all groups will be paid more than if the cases were liquidated separately. Without substantive consolidation, the Court will be forced to oversee four (4) separate bankruptcy cases, each with its own claims process, preference actions, and plan of reorganization. Handling and concluding this many proceedings will take an inordinate amount of time and will cost the Debtors and this Court an undue amount of time and energy. If

substantively consolidated, the Debtors and this Court can wrap up these proceedings efficiently and more easily.

### II. Joint Administration is appropriate in the case pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015

34.    Bankruptcy Rule 1015(b) provides, in relevant part, that "[i]f a joint petition or two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Similarly, the Local rules provide that the Debtors, consisting of a parent corporation and its direct subsidiaries, are "affiliates," as that term is defined in § 101(2) of the Bankruptcy Code. Accordingly, this Court is authorized to grant the relief requested. An order of joint administration relates to the routine administration of a case and may be entered by the Court in its sole discretion.

35.    The joint administration of the Debtors' chapter 11 bankruptcy cases will permit the clerk of the Court to utilize a single general docket for these cases and combine notices to creditors of the Debtors' respective estates and other parties in interest. Entering an order directing joint administration of the Debtors' chapter 11 cases will avoid the need for duplicative notices, motions and applications, thereby saving time and expense. Joint administration also will enable parties in interest in each of the above-captioned chapter 11 cases to be apprised of the various matters before the Court in all of these cases.

36.    Furthermore, because these cases involve a multitude of creditors, the entry of an order of joint administration will: (a) significantly reduce the volume of pleadings that otherwise

would be filed with the clerk of this Court; (b) render the completion of various administrative

tasks less costly; and (c) minimize the number of unnecessary delays associated with the

administration of four (4) separate chapter 11 bankruptcy cases.


**III. The Consolidated Debtor should be granted a ninety (90) day exclusive period to file a plan and one hundred twenty (120) days to solicit acceptances of said plan pursuant to § 1121**

37.    Should this Court grant the request of Debtors to administratively and

substantively consolidate, the Debtors hereby request the Court provide the consolidated Debtors

a brief period of time, i.e. ninety (90) days, to file a plan and one hundred twenty (120) days to

solicit acceptances thereof.

38.    The consolidated Debtors are currently formulating a plan on a consolidated basis

and are optimistic said plan shall be filed promptly.


## NOTICE

39.    No previous motion for the relief requested in the Motion has been made to this or

any other Court.

**WHEREFORE,** the Debtors request that this Court enter an order substantively consolidating the Debtors' estates, the joint administration of the Debtors' estates, and granting such other and further relief as is just and proper.

DATED:      Albany, New York
              October 2, 2024

                            O'CONNELL AND ARONOWITZ, P.C.
                            By:
                            Peter A. Pastore, Esq.
                            Attorneys for Debtors
                            54 State Street, 9th Floor
                            Albany NY  12207
                            (518) 462-5601
                            papastore@oalaw.com

{O1508081.1}

14

Exhibit "A"



# Exhibit "B"
## Officers and Directors of the Debtors

| Cell-Nique | Officers and Directors |
|---|---|

• **Daniel J. Ratner**
  - • Sole Officer
  - • Sole Director
  - • Secretary

| Hudson River Foods | Officers and Directors |
|---|---|

• **Daniel J. Ratner**
  - • Sole Officer
  - • Sole Director
  - • Secretary

| Dancing Deer | Officers and Directors |
|---|---|

• **Daniel J. Ratner**
  - • Sole Officer
  - • Sole Director
  - • Secretary

| Hodgson Mill | Officers and Directors |
|---|---|

• **Daniel J. Ratner**
  - • Sole Officer
  - • Sole Director
  - • Secretary

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In Re:

CELL-NIQUE CORPORATION, et al,

         Debtors.

Case Number: 24-10508-1
Chapter 11 (Main Case)
Case Number: 24−10667-1
Case Number: 24-10775-1
Case Number: 24−10702-1

Jointly Administered

_____

Exhibit "D"

Cell-nique Consolidation Schedule

| Schedule 1 Cell-nique Corporation Fully Consolidated | Historical Cost | As of July 2024 Depreciation | Net Book Value | Forced Liquidation Value |
|---|---|---|---|---|
| Fixed Assets (Equipment) | 6,260,446 | (3,609,097) | 1,891,744 | 620,186 |
| Net Collectable AR > 90 days | 549,235 | | 329,541 | 329,541 |
| Inventory | 711,333 | 711,333 | 711,333 | 100,000 |
| IP - CBK | 1,799,253 | (1,938,854) | 139,601 | 50,000 |
| IP - EGB | 255,000 | (394,601) | 139,601 | 50,000 |
| IP - HTG | 136,572 | (136,572) | - | 5,000 |
| IP - HRF | | | - | - |
| IP - DD | 4,360,193 | (1,737,836) | 2,622,357 | 100,000 |
| IP - HMC | 3,410,310 | (3,313,500) | 96,810 | 96,810 |
| Total Assets | 17,482,342 | (10,419,127) | 5,930,986 | 1,351,537 |
| | | | | |
| IRS | | | | 49,000 |
| Senior Lien CN etal | Berkshire Bank | | | 2,200,000 |
| Senior Subordinated CN etal | NYBDC/Pusuit | | | 4,500,000 |
| Senior Subordinated | TD Bank | | | 110,000 |
| Senior Subordinated | PCC Castleton | | | 3,981,795 |
| Senior Lien DD | | | | 5,000,000 |
| Senior Lien HMC | | | | 4,374,500 |
| Subtotal Secured Creditors | | | | 20,215,295 |
| | | | | |
| Unsecured Creditors | | | | 2,178,549 |

Exhibit "E"

Schedule 2

| Cell-nique Corporation Parent Only | | Historical Cost | As of July 2024 Depreciation | Net Book Value | Forced Liquidation Value |
|---|---|---|---|---|---|
| Fixed Assets (Equipment) | | 4,252,341 | (2,901,810) | 1,350,531 | 472,686 |
| Net Collectable AR > 90 days | | | - | | - |
| Intellectual Property | | | | | |
| IP - CBK | | 1,799,253 | (1,938,854) | 139,601 | 50,000 |
| IP - EGB | | 255,000 | (394,601) | 139,601 | 50,000 |
| IP - HTG | | 136,572 | (136,572) | - | 5,000 |
| | | | | | |
| Total Assets | | 6,443,166 | (5,371,836) | 1,629,733 | 577,686 |
| IRS | | | | | 49,000 |
| Senior Lien | Berkshire Bank | | | | 2,200,000 |
| Senior Subordinated | NYBDC/Pusuit | | | | 4,500,000 |
| Senior Subordinated | TD Bank | | | | 110,000 |
| Senior Subordinated | PCC Castleton | | | | 3,981,795 |
| Subtotal Secured Creditors | | | | | 10,840,795 |
| | | | | | |
| Unsecured Creditors | | | | | 9,625,626 |

Exhibit "F"

**Schedule 3**

| Hudson River Foods Corporation | | Historical Cost | As of July 2024 Depreciation | Net Book Value | Forced Liquidation Value |
|---|---|---|---|---|---|
| Fixed Assets (Equipment) | | 1,268,055 | (1,087,090) | 180,965 | 87,500 |
| Net Collectable AR > 90 days | | 535,417 | | 321,250 | 321,250 |
| Inventory | | 711,333 | 711,333 | 711,333 | 100,000 |
| Intellectual Property | | | | | |
| IP- HRF | | - | - | - | - |
| | | | | | |
| **Total Assets** | | 2,514,805 | (375,757) | 1,213,548 | 508,750 |
| | | | | | |
| Senior Lien | Berkshire Bank | | | | 2,200,000 |
| Senior Subordinated | NYBDC/Pusuit | | | | 4,500,000 |
| Senior Subordinated | TD Bank | | | | 110,000 |
| | | | | | |
| **Subtotal Secured Creditors** | | | | | 6,810,000 |
| | | | | | |
| Unsecured Creditors | | | | | 948,562 |

Exhibit "G"

Schedule 4

| Dancing Deer Corporation | Historical Cost | As of July 2024 Depreciation | Net Book Value | Forced Liquidation Value |
|---|---|---|---|---|
| Fixed Assets (Equipment) | 740,050 | 379,803 | 360,248 | 60,000 |
| Net Collectable AR > 90 days | 6,909 | | 4,145 | 4,145 |
| Intellectual Property | | | | |
| IP- DD | 4,360,193 | (1,737,836) | 2,622,357 | 100,000 |
| | | | | |
| Total Assets | 5,107,152 | (1,358,033) | 2,986,750 | 164,145 |
| Senior Lien | Dancing Deer Baking Co LLC | | | 5,000,000 |
| Senior Subordinated | Berkshire Bank | | | 2,200,000 |
| Senior Subordinated | NYBDC/Pusuit | | | 4,500,000 |
| Senior Subordinated | TD Bank | | | 110,000 |
| Subtotal Secured Creditors DD | | | | 11,810,000 |
| Unsecured Creditors | | | | 681,897 |

Exhibit "H"

Schedule 5

| Hodgson Mill Corporation | Historical Cost | As of July 2024 Depreciation | Net Book Value | Forced Liquidation Value |
|---|---|---|---|---|
| Fixed Assets (Equipment) | - | - | - | - |
| Net Collectable AR > 90 days | 6,909 | | 4,145 | 4,145 |
| Intellectual Property | | | | |
| IP- HMC | 3,410,310 | (3,313,500) | 96,810 | 96,810 |
| | | | | |
| Total Assets | 3,417,219 | (3,313,500) | 100,955 | 100,955 |
| Senior Lien | HM Fox, LLC | | | 4,374,500 |
| Offsetting Claim in DE Judgement | | | | (4,374,500) |
| Senior Subordinated | Berkshire Bank | | | 2,200,000 |
| Senior Subordinated | NYBDC/Pusuit | | | 4,500,000 |
| Senior Subordinated | TD Bank | | | 110,000 |
| Subtotal Secured Creditors HM | | | | 6,810,000 |
| | | | | |
| Unsecured Creditors | | | | 32,964 |