UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re:<br><br>CELL-NIQUE CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 24-10508 (REL)<br>(Main Case)<br>Case Number: 24-10702<br>Case Number: 24-10775<br>Case Number: 24-10677<br>Consolidated |

## PLAN OF REORGANIZATION OF CELL-NIQUE CORPORATION

Cell-nique Corporation, as debtor and debtor-in-possession, proposes this Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code for the resolution of the Debtor's outstanding creditor claims. Reference is made to the Disclosure Statement (the "Disclosure Statement") for a discussion of the Debtor's history, business, properties and results of operations, and for a summary of this Plan and certain related matters.

All holders of Claims and Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of this Plan.

## ARTICLE I
## SUMMARY OF THE PLAN

Generally, the Plan provides the Debtor to pay its secured creditors 100% of their claims and the unsecured creditors 17.3% of their claims. Under the Plan, the Debtor proposes to adjust amortized monthly payments with TD Bank, Berkshire Bank, and SBA EIDL in months one through thirty (1-30) to eight percent (8% fixed interest only payments followed by payments calculated at a fixed interest rate of eight percent (8%) amortized over ten (10) years in months thirty one through sixty  (31-60) with a balloon payment due at the end of the 60th month.  The Debtor proposes to make monthly, interest only payments to Secured creditors MCA Assist, MCA Parkside, MCA CGF, Dancing Dear, and HMI Fox at a fixed interest rate of five percent (5%) with a ballon payment due at the end of the 60th month. The Debtor proposes to make a monthly to NYBDC of $17,500 out of which $10,964 is monthly interest calculated at 6.03% on the NYBDC principal balance and $6,535 is monthly principal reduction. The Debtor proposes to pay the IRS secured claim at the statutory interest rate amortized over ten

(10) years with a balloon payment due at the end of the 60th month. Under the Plan Reiser shall be paid in equal monthly installments of $1,700 all of which shall be allocated as principal reduction payments until Reiser is paid in full.

Under the Plan, the Debtor proposes to pay Unsecured Creditors $350,000 annually over the five (5) year term of the Plan.

The Debtor's believes its projected revenues per Exhibit "A" of the Disclosure Statement are feasible based upon its current ongoing operations and its historical income and that there will be sufficient net revenue to make the proposed payments to the creditors under the Plan.  Dan Ratner, will make a $50,000 New Value Contribution to the Debtor under the Plan.

**ARTICLE II**
**DEFINITIONS**

As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan.

**2.1.   Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any actual and necessary post-petition expenses of operating the business of the Debtor, professional professional fees of the Debtor, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 11, Title 28, United States Code. With respect to quarterly U.S. Trustee fees, Debtor shall timely pay all post-confirmation quarterly fees as they accrue until the date of the closing of the Chapter 11 Case.

**2.2.   Allowance Date:** The date that a Claim becomes an Allowed Claim.

**2.3.   Allowed Claim:** The portion of a Claim that is not a Disputed Claim or a Disallowed Claim.

**2.4.   Allowed Administrative Claim:** An Administrative Claim to the extent it is or becomes an Allowed Claim.

**2.5.    Allowed Priority Non-Tax Claim:** Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, to the extent Allowed and entitled to priority in payment under Section 507(a) of the Bankruptcy Code. Debtor believes it has no such priority non-tax claims.

**2.6.    Allowed Priority Tax Claim:** Any Claim, to the extent allowed and entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**2.7.    Allowed Secured Claim:** A Secured Claim of a creditor to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not become an Avoided Lien.

**2.8.    Allowed Unsecured Claim:** An Unsecured Claim to the extent it is or becomes an Allowed Claim.

**2.9.    Available Cash:** All of the Cash held by the Debtor including cash deposited or held in the Distribution Reserve on account of disputed or undetermined Administrative Expense, Priority, Secured or General Unsecured Claims to the extent that those claims are disallowed in whole or in part after the Effective Date, less the Distribution Reserve.

**2.10.  Avoidance Actions:** Any and all rights, claims and Causes of Action arising under any provision of Chapter 5 of the Bankruptcy Code.

**2.11.  Avoided Lien:** A Lien to the extent it has been set aside, invalidated, or otherwise avoided pursuant to an Avoidance Action.

**2.12.  Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code, as applicable to this Chapter 11 Case.

**2.13.  Bankruptcy Court:** The United States District Court for the Northern District of New York, Albany Division.

**2.14.  Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the United States Bankruptcy Court, Northern District of New York, as now in effect.

**2.15.  Bar Date:** The deadline for filing proofs of claim established by the Bankruptcy Court was August 7, 2024. The deadline for filing proofs of claim for Governmental entities established by the Bankruptcy Court was November 5, 2024.

**2.16.  Cash:** Cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issues by banks, and commercial paper of any Person, including interest accrued or earned thereon.

**2.17.   Causes of Action:** Any and all claims, causes of action or rights to legal or equitable remedies, whether known· or unknown, reduced to judgment or not, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Actions.

**2.18.   Chapter 11 Case:** The Chapter 11 consolidated case of Cell-nique Corporation pending in the Bankruptcy Court under case number 24-10508-1, 24−10667-1 (Dancing Deer Corporation),   24-10775-1 (Hudson River Foods Corporation), and  24−10702-1 (Hodgson Mill Corporation).

**2.19.   Claim:** Any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to any equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

**2.20.   Claimant or Claimholder:** A person asserting a Claim against the Debtor, property of the Debtor, or the Debtor's Estate.

**2.21.   Class:** One of the classes of Claims or Interests defined in Article IV hereof.

**2.22.   Creditors Committee:** The Official Committee of Unsecured Creditors appointed in this Bankruptcy Case.

**2.23.   Collateral:** Any property of the Debtor or interest in property of the Debtor which serves as security for the repayment of a debt or the performance of an obligation owed by the Debtor to the holder of an Allowed Secured Claim.

**2.24.   Confirmation Date:** The date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**2.25.   Confirmation Hearing:** The hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**2.26.   Confirmation Order:** The Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**2.27.   Creditor:** Any person that holds a Claim against the Debtor that arose on or before the Petition Date, or a Claim against the Debtor of any kind specified in Sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**2.28.   Debtor:** Cell-nique Corporation, a Delaware corporation and a Chapter 11 debtor, Case No. 24-10508-1 together with the other consolidated Debtors, 24-10702 Hodgson Mill Corporations, 24-10775 Hudson River Foods Corporation, 24-10667 Dancing Deer Corporation.

**2.29.   Debtor-in-Possession:** The Debtor in its capacity as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**2.30.   Deficiency Claim:** The amount by which an Allowed Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with Section 506(a) of the Bankruptcy Code. A Deficiency Claim is a General Unsecured Claim, but only if the holder of the Claim had recourse against the Debtor prior to any foreclosure on Collateral.

**2.31.   Disallowed Claim:** A Claim, or any portion thereof, that (a) has been disallowed by either a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**2.32.   Disclosure Statement:** The Disclosure Statement with respect to the Chapter 11 Plan of Reorganization filed by the Debtor with the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as may be amended or supplemented.

**2.33.   Disputed Claim:** A Claim as to which a proof of claim has been filed or deemed filed under applicable law, as to which an objection has been or may be timely filed and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely filed, for the purposes of the Plan, a Claim shall be considered a Disputed Claim to the extent that (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim Scheduled by the Debtor in its Schedules of Assets and Liabilities to the extent of such excess; or (ii) no corresponding Claim has been Scheduled by the Debtor in its Schedules of Assets and Liabilities, or (iii) the Claim has been Scheduled as contingent, disputed or unliquidated.

**2.34.   Distribution:** The property required by the Plan to be distributed to the holders of Allowed Claims shall be made by the Debtor.

**2.35.   Left Blank Intentionally**

**2.36.   Left Blank Intentionally**

**2.37.   Left Blank Intentionally**

**2.38. Effective Date:** A date which shall be on or before the day the Confirmation Order becomes a Final Order.

**2.39. Estate:** The estate created upon the filing of the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

**2.40. Final Distribution:** A Distribution made under the Plan which represents the only or last Distribution to be made to a particular Class of Creditors.

**2.41. Final Distribution Date:** The date upon which the Debtor makes a Final Distribution.

**2.42. Final Order:** An order or judgment which has not been reversed, stayed, modified, or amended and as to which (a) any appeal, other review or stay that has been filed has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**2.43. General Unsecured Claim:** A Claim other than a Secured Claim, an Administrative Claim, a Priority Non-Tax Claim, or a Priority Tax Claim.

**2.44. Interest or Equity Interest:** Any interest in the Debtor represented by ownership.

**2.45 .Interest Holder:** Any holder or owner of an Interest.

**2.46. Left Blank Intentionally**

**2.47. Person:** An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

**2.48. Petition Date:** May 9, 2024, the date on which the Debtor filed its voluntary Chapter 11 petition commencing the Chapter 11 Case.

**2.49. Plan:** This Plan of Reorganization of the Debtor, as it may be amended or modified.

**2.50. Plan Ballot:** The form of ballot which the Debtor will transmit to Creditors who are, or may be, entitled to vote on the Plan.

**2.51. Post-Confirmation Service List:** The list of the holders of the 20 largest General Unsecured Claims against the Debtor.

**2.52. Priority Non-Tax Claim:** Any Claim (other than an Administrative Expense Claim or a Priority Tax Claim) to the extent entitled to priority in payment under

Section 507(a) of the Bankruptcy Code including, but not limited to, a Claim of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred eighty (180) days prior to the Petition Date (to the extent of $11,725 per employee). Debtor believes it does not have any priority non-claimants.

**2.53. Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**2.54 .Pro Rata:** The proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class.

**2.55. Released Parties:** means collectively and in each case in their capacity as such: (a) the Debtor; (b) the Estate; (c) Dan Ratner (the Debtor's President); and (d) with respect to each of the foregoing entities in clauses through (d), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

**2.56. Reorganized Debtor:** The Reorganized Debtor, Cell-nique Corporation, Hodgson Mill Corporation, Hudson River Foods Corporation, and Dancing Deer Corporation as consolidated, on and after the Effective Date.

**2.57. Schedules:** The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**2.58. Secured Claim:** A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's estate securing such Claim, or any Claim to the extent that it is subject to setoff under Section 553 of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Claim unless, in any such case, the class of which such Claim is part makes a valid and timely election under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**2.59. Unsecured Claim.** A Claim not secured by a charge, mortgage or lien against or interest in property in which the Debtor's estate has an interest, including but not limited to any Deficiency Claim and any claim for damages resulting from the rejection of an executory contract or lease.

## ARTICLE III
## RULES OF CONSTRUCTION AND INTERPRETATION

**3.1.**    The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Should there be any discrepancy between the Plan and the Disclosure Statement, the Plan shall govern.

**3.2.**    A term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A term used in this Plan and not defined herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, has the meaning assigned to the term in the Bankruptcy Rules.

**3.3.**    In computing any period of time, Bankruptcy Rule 9006(a) shall apply.

## ARTICLE IV
## DESIGNATION OF CLAIMS AND INTERESTS

**4.1.**    **Summary:** The following is a designation of the classes of Claims and Interests under the Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Tax Claims described in Article V of the Plan have not been classified and are excluded from the following classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest.

| Class | Status |
|---|---|
| **A. Secured Claims** | |
| Class 1:  Secured Claim of Creditor New York Business Development Corporation | Unimpaired – Not entitled to vote; to be paid in accordance with Plan. |

Class 2:  Secured Claim of Creditor
Physicians Capitol Corporation
PCC Castleton Corporation

Insider Claim- not entitled to vote;
And shall receive no payments over
the 5 year term of the Plan.

Class 3:  Secured Claim of Creditor
Berkshire Bank

Not impaired – Not entitled to vote; to
be paid in accordance with Plan on a
claim of $2,224,303

Class 4:  Secured Claim of Creditor
TD Bank

Not impaired – Not entitled to vote; to
be paid in accordance with the Plan on
a claim of $112,596

Class 5:  Secured Claim of Creditor
SBA EIDL

Not impaired – Not entitled to vote; to
be paid in accordance with Plan on a
claim of $166,875

Class 6:  Secured Claim of Creditor
MCA Capital Assist

Impaired - entitled to vote; to be paid in
accordance with Plan on an impaired
claim of $31,671.20

Class 7:  Secured Claim of Creditor
MCA Parkside

Impaired - entitled to vote; to be paid in
accordance with Plan on an impaired
claim of $42,457.50

Class 8:  Secured Claim of Creditor
MCA CFG

Impaired - entitled to vote; to be paid in
accordance with Plan on an impaired
claim of $88,518.21

Class 9:  Secured Claim of Creditor
Pawnee

Not impaired – Not entitled to vote; to
be paid in accordance with Plan on a
claim of $124,066

Class 10:  Secured Claim of Creditor
Dancing Deer

Impaired - entitled to vote; to be paid in
accordance with Plan on an impaired
secured claim of $150,000 with the
approximate $4,700,000 balance of its
claim treated as a Class 15 unsecured
claim.

| Class 11:  Secured Claim of Creditor HMI Fox | Impaired - entitled to vote; to be paid in accordance with Plan on an impaired secured claim of $50,000 with the approximate $4,450,000 balance of its claim treated as a Class 15 unsecured claim. |
|---|---|
| Class 12:  Secured Claim of Creditor Reiser | Not impaired – Not entitled to vote; to be paid in accordance with Plan on a secured claim of $85,000 |
| Class 13:  Secured Priority Tax Claim of the Internal Revenue Service | Not impaired – Not entitled to vote; to be paid in accordance with Plan on an impaired secured claim of $46,787 |

**B.    Unsecured Claims**

| Class 14:   Priority Tax Claims of the Internal Revenue Service | Unimpaired - not entitled to vote; to be paid in full, fully amortized for five years from the petition date (4 yr amortization) with monthly payments calculated at the 1 Year Constant Maturity Index: amount of Claims total $115,358 |
|---|---|
| Class 14 (a):   Priority Tax Claims of the New York State Department of Taxation & Finance | Unimpaired - not entitled to vote; to be paid in full, fully amortized for five years from the petition date (4 yr amortization) with monthly payments calculated at the twelve percent (12%) amount of Claims total $93,289 |
| Class 15:  General Unsecured Claims | Impaired - entitled to vote; Approximate 17.3% distribution. |

**C.    Interests**

| Class16: Equity Interests | Class 16 interests are not entitled to vote on the Plan |
|---|---|

**4.2.    Controversy Concerning Classification, Impairment or Voting Rights:**
In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the

Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case.

## ARTICLE V
## TREATMENT OF UNCLASSIFIED CLAIMS

### 5.1.  Administrative Expense Claims.

(a)  **General**: Subject to the Bar Date provisions, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date or as soon as practicable thereafter, (b) the Allowance Date, (c) such date as is mutually agreed upon by the Debtor and the holder of such Claim, and (d) the Distribution Date.

(b)  **Payment of Statutory Fees:**  All fees payable pursuant to 28 U.S.C. §1930 shall be paid in Cash equal to the amount of such Administrative Expense Claim when due.

(c)  **Bar Date for Administrative Expense Claims:**

(i)  **General Provisions:**  Requests for payment of Administrative Expense Claims must be filed no later than forty-five (45) days after the Effective Date. Holders of Administrative Expense Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the holders of any Claims for federal, state or local taxes) that are required to file a request for payment of such Claims and that do not file such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor or any of their respective property.

(ii)  **Professionals:**  All professionals or other entities requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) shall file and serve an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Any professional fees and reimbursements or expenses incurred by the Debtor and the Creditors Committee subsequent to the Effective Date may be paid without application to or approval by the Bankruptcy Court.

(iii)  **Tax Claims:**  All requests for payment of Administrative Expense Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or

falls within the period from and including the Petition Date through and including the Effective Date ("Post-Petition Tax Claims") and for which no bar date has otherwise been previously established, must be filed on or before the later of (i) 20 days following the Effective Date; and (ii) 30 days following the filing with the applicable governmental unit of the tax return for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to File a request for payment of such taxes and does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date. To the extent that the holder of a Post-Petition Tax Claim holds a lien to secure its Claim under applicable state law, the holder of such Claim shall retain its lien until its Allowed Claim has been paid in full.

## ARTICLE VI
## CLASSIFICATION AND TREATMENT OF CLASSIFIED
## CLAIMS AND INTERESTS

### 6.1    NEW YORK BUSINESS DEVELOPMENT CORPORATION (NYBDC)

Class 1 consists of the allowed secured claim NYBDC in Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 1 Claimants Claim shall be paid in equal monthly installments of $17,500 throughout the term of the plan on the allowed secured claim of the Class 1 Claimant

The Class 1 Claimants Claim shall accrue interest at 6.03% with $1,407.75 of each $17,500 monthly instalment allocated as a principal reduction payment.

The Class 1 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Class 1 Balloon Payment at the end of the 60th Month:    $1,789,873

The Class 1 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 1 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 1 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 1 Claimants instruments encumbering its collateral as an Allonge.

Class1 is unimpaired and not entitled to vote under the Plan

### 6.2.    PHYSICIANS CAPITOL CORPORATION AND PCC CASTLETON CORPORATION

a.      Class 2 claimants are insiders and holders of allowed claims in Class 2 are not entitled to vote and shall receive no payments over the 5 year term of the Plan.

### 6.3.    BERKSHIRE BANK

Class 3 consists of the allowed secured claim of Berkshire Bank in the approximate amount of $2,224,303. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 3 Claim shall be paid in equal monthly installments of $14,829 in months one through thirty (1-30), representing monthly installments of interest only payments calculated at a fixed interest rate eight percent (8%) on the allowed secured claim of the Class 3 Claimant.

Commencing on the thirty first (31st) month of the Plan through the sixtieth (60th) month of the plan, the Class 3 Claimants' claim shall be amortized over 10 years at an interest rate of eight percent ( 8%) paid in equal monthly installments of approximately $26,987.

The Class 3 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:      ,$165,439

The Class 3 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 3 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 3 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 3 Claimants instruments encumbering its collateral as an Allonge.

Class 3 is not impaired and not entitled to vote under the Plan

### Event of Default

Non-payment of principal or interest, or any fees or other sums due herein shall constitute an Event of Default following Berkshire Bank's ("Berkshire" or "Lender") delivery to Debtor of a notice of such default by letter and email to both Debtor and Debtor's counsel (a "Notice of Default") and which default is not remedied within fifteen (15) calendar days of delivery thereof to Debtor. Debtor may remedy said Default by paying at least fifty (50%) percent of the monthly past due payment within said fifteen (15) days, and if Debtor makes such payment, Debtor shall be permitted another fifteen (15) days to remedy said default including any subsequent payment that becomes due during said cure period. In sum, Debtor may cure a Notice of Default if it pays at least fifty (50%) percent of the past due amounts within the first fifteen (15) days of delivery thereof to the Debtor and cures the entire amount past due including any subsequent

payments that become due during said cure period within thirty (30) days of delivery thereof to Debtor.  In addition, the occurrence of a non-monetary Event of Default under this Plan of Reorganization or the existing Loan Documents (other than an Event of Default already existing at the time of confirmation of the Plan of Reorganization) shall, following delivery of a Notice of Default and a thirty (30) day opportunity to cure, constitute an Event of Default under this Plan of Reorganization.

Upon the happening of one or more Events of Default, Lender shall be entitled to exercise all of the rights, recourses and remedies available under its Loan Documents, this Plan of Reorganization, at law and in equity, including without limitation by declaring the principal of the amounts then outstanding to be immediately due and payable, together with all interest thereon and fees and expenses accruing under this Plan of Reorganization.

### Failure of Debtor to Remedy an Event of Default:

Should Debtor fail to remedy an Event of Default within the applicable time period as set forth above, Debtor shall promptly voluntarily surrender all collateral security assets to the Lender and/or its agents, employees, attorneys and representatives and cooperate with the Lender and/or its agents, employees, attorneys and representatives in an orderly liquidation of the collateral security, and furthermore, Debtor shall be prohibited from filing a serial petition for relief under the Bankruptcy Code.  Furthermore, if an Event of Default occurs prior to the refinance and payment of the collateral security mortgage securing the residence of the Debtor's principal, Dan Ratner, then Lender may proceed to enforce all of its rights, recourses and remedies under such collateral security mortgage.  Debtor agrees that the filing of any personal bankruptcy by the Debtor's principal, Dan Ratner, shall not operate as a stay against Lender's ability to exercise its rights as against the Debtor and to proceed with an orderly liquidation of the Debtor's collateral security.

### Refinance of Existing Collateral Security Mortgage:

Debtor's principal, Daniel Ratner, agrees to exercise diligence and best efforts in refinancing the existing collateral security mortgage against his residence in favor of Berkshire, which is the subject of a pending state court mortgage foreclosure action bearing Albany County Index No. 905226-22 (the "Foreclosure Action"), within one hundred eighty (180) days from the date of confirmation of this Plan of Reorganization. Daniel Ratner shall (a) apply for a refinance of the existing collateral security mortgage on his residence with at least three (3) lenders other than Berkshire within sixty (60) days of Plan confirmation, (b) provide to Berkshire either a letter of intent, term sheet or commitment letter for such refinance for Berkshire's consideration within one hundred twenty (120) days of Plan confirmation, and (c) close on such refinance and pay all available Refinance Net Proceeds (defined below) to Berkshire within one hundred eighty (180) days of Plan confirmation.  Berkshire reserves the right to accept or reject any refinance proposal in its sole and absolute discretion.  "Refinance Net Proceeds" shall mean the gross proceeds of such refinance, less ordinary and necessary costs

and expenses associated with such refinance, such as mortgage recording taxes, bank fees, appraisal costs, reasonable attorneys' fees and document recording fees. Approval of any such refinance proposal and acceptance of the Refinance Net Proceeds is subject to final approval by the United States Small Business Administration. Upon indefeasible receipt by Berkshire of the Refinance Net Proceeds, Berkshire shall release the lien of its collateral security mortgage.  Berkshire agrees to notify the state court judge in the Foreclosure Action that the Foreclosure Action shall remain stayed for a period of one hundred eighty (180) days following the date of confirmation of this Plan of Reorganization to allow time for such refinance. The stay of the Foreclosure Action shall automatically terminate upon the occurrence of an Event of Default hereunder without the need for any further Bankruptcy Court Order.

### 6.4.   TD BANK

Class 4 consists of the allowed secured claim of TD Bank in the approximate amount of $112,596. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 4 Claim shall be paid in equal monthly installments of $751 in months one through thirty (1-30), representing monthly installments of interest only payments calculated at a fixed interest rate of eight percent (8%) on the allowed secured claim of the Class 4 Claimant.

Commencing on the thirty first (31st) month of the Plan through the sixtieth (60th) month of the plan, the Class 4 Claimants' claim shall be amortized over 10 years calculated at a fixed interest rate of eight percent ( 8%) in equal monthly installments of approximately $1,366, adjusted in accordance with the Prime Rate on the 31st month.

The Class 4 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:  $109,477

The Class 4 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 4 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 4 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 4 Claimants instruments encumbering its collateral as an Allonge.

Class 4 is not impaired and not entitled to vote under the Plan

### 6.5.   SBA EIDL

Class 5 consists of the allowed secured claim of SBA EIDL in the approximate amount of $166,875. Subject to the  Plan, with respect to Disputed Claims, on the

Effective Date the holder of the Class 5 Claim shall be paid in equal monthly installments of approximately $1,117 in months one through thirty (1-30), representing monthly installments of interest only payments calculated at a fixed interest rate of eight percent (8%), on the allowed secured claim of the Class 5 Claimant.

Commencing on the thirty first (31st) month of the Plan through the sixtieth (60th) month of the plan, the Class 5 Claimants' claim shall be amortized over 10 years calculated at the a fixed interest rate of eight percent (8%) and paid in equal monthly installments of approximately $$1,395.81.

The Class 5 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:      $162,505

The Class 5 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 5 Claimant shall retain its pre-petition collateral under the Plan.

Interest rate adjustments shall be pursuant to the SBA EIDL Loan Documentation.

Upon entry of the Confirmation Order the Class 5 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 5 Claimants instruments encumbering its collateral as an Allonge.

Class 5 is not impaired and not entitled to vote under the Plan.

### 6.6.    MCA CAPITAL ASSIST

Class 6 consists of the allowed secured claim of MCA Capital Assist in the approximate amount of $31,671. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 6 Claim shall be paid in equal monthly installments of $132   representing monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%)  throughout the term of the plan on the allowed secured claim of the Class 6 Claimant

The Class 6 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:      $31,671

The Class 6 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 6 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 6 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 6 Claimants instruments encumbering its collateral as an Allonge.

Class 6 is impaired and entitled to vote under the Plan

### 6.7.   MCA CAPITAL PARKLINE

Class 7 consists of the allowed secured claim of MCA Parkside in the approximate amount of $42,457. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 7 Claim shall be paid in equal monthly installments of $177  representing monthly installments of interest only payments calculated at a fixed interest rate of  five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 7 Claimant.

The Class 7 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:      $42,457

The Class 7 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 7 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 7 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 7 Claimants instruments encumbering its collateral as an Allonge.

Class 7 is impaired and entitled to vote under the Plan.

### 6.8.   MCA CFG

Class 8 consists of the allowed secured claim of MCA CFG in the approximate amount of $88,518. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 8 Claim shall be paid in equal monthly installments of $369 representing monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 8 Claimant

The Class 8 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:    $88,518

The Class 8 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 8 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 8 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 8 Claimants instruments encumbering its collateral as an Allonge.

Class 8 is impaired and entitled to vote under the Plan.

### 6.9.    PAWNEE

Class 9 consists of the allowed secured claim of Pawnee in the approximate amount of $124,066. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 9 Claim shall be paid in equal monthly installments of $2,067.77 throughout the term of the plan on the allowed secured claim of the Class 9 Claimant

The Class 9 Claimants' Claim shall be paid treated as paid in full at the end of the sixtieth (60th) month following the Effective Date of the Plan through payment of the sixty (60) monthly installments.

The Class 9 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 9 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 9 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 9 Claimants instruments encumbering its collateral as an Allonge.

Class 9 is not impaired and not entitled to vote under the Plan

### 6.10.    DANCING DEER

Class 10 consists of the allowed secured claim of Dancing Dear in the approximate amount of $150,000. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 10 Claim shall be paid in equal monthly installments of $625   representing monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 10 Claimant

The Class 10 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance

of the Debtor and may be paid in full at any time under the Plan with no prepayment penalty.

Projected Balloon Payment at the end of the 60th Month:     $150,000

The approximate $4,700,000 balance of the Class 10 Claimants Claim is treated as Class 15 unsecured Claimant under the plan.

The Class 10 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 10 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 10 Claimants instruments encumbering its collateral as an Allonge.

Class 10 is impaired and entitled to vote under the Plan.

### 6.11.  HMI FOX

Class 11 consists of the allowed secured claim of HMI Fox in the approximate amount of $50,000. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 11Claim shall be paid in equal monthly installments of $208 representing monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 11 Claimant

The Class 11 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor and may be paid in full at any time under the Plan with no prepayment penalty.

Projected Balloon Payment at the end of the 60th Month:     $50,00

The approximate $6,523,000 balance of the Class 11 Claimants Claim is treated as Class 15 unsecured Claimant under the plan.

The Class 11 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 11 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 11Claimants instruments encumbering its collateral as an Allonge.

Class 11 is impaired and entitled to vote under the Plan.

### 6.12.  REISER

Class 12 consists of the allowed secured claim of Reiser in the approximate amount of $85,000. Subject to the Plan, with respect to Disputed Claims, On the Effective Date the holder of the Class 12 Claim shall be paid in equal monthly

installments of $1,700 all of which shall be allocated as principal reduction payments until the Class 12 Claimants' Claim is paid in full.

The Class 12 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 12 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 12 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 12 Claimants instruments encumbering its collateral as an Allonge.

Class 12 is not impaired and not entitled to vote under the Plan.

### 6.13. CLASS 13 - SECURED PRIORITY TAX CLAIM OF THE INTERNAL REVENUE SERVICE

Class 13 consists of the allowed Secured Priority Tax Claim of the Internal Revenue Service in the approximate amount of $46,787. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 13 Claimants' claim shall be amortized over 10 years at the IRS Proof of Claim interest rate of eight percent (8%) paid in equal monthly installments of approximately $1,224.

The Class 13 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

The Class 13 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 13 Claimant shall retain its pre-petition collateral under the Plan.

Class 13 is not impaired and not entitled to vote under the Plan.

### 6.14. Class 14 - Allowed Unsecured Tax Priority Claims

As set forth more fully in the Plan, unless otherwise agreed by the holder of a Priority Tax Claim and the Reorganized Debtor, each Tax Creditor will receive, in full satisfaction of its Allowed Priority Tax Claim, deferred cash payments totaling the Allowed amount of such Claim over a period not exceeding five (5) years from the Petition Date, as required by the Bankruptcy Code, which period shall conclude on or about April 15, 2029.   The Plan provides that payments on the Allowed Priority Tax Claims.

Class 14 consists of the allowed Unsecured Priority Tax Claim of the Internal Revenue Service in the approximate amount of $115,358. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 14 Claimants'

claim shall be amortized over 4 years (5 years from the petition date) with monthly payments calculated at an interest rate equal to the 1 Year Constant Maturity Index of approximately four point three four percent (4.34%) paid in equal monthly installments of approximately $2,559.48.

The Class 14 Claimants' Claim shall be deemed paid in full on the forty eighth (48th) month following the Effective Date of the Plan by way of the equal monthly installment payments.

The Class 14 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

### 14(a) UNSECURED PRIORITY TAX CLAIMS OF NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE

14(a) consists of the allowed Unsecured Priority Tax Claim of the New York State Department of Taxation & Finance in the approximate amount of $93,289. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the 14(a) Claimants' claim shall be amortized over 4 years (5 years from the petition date) with monthly payments calculated at an interest rate equal to the Proof of Claim interest rate of twelve percent (12%) paid in equal monthly installments of approximately $2,457.

The 14(a) Claimants' Claim shall be deemed paid in full on the forty eighth (48th) month following the Effective Date of the Plan by way of the equal monthly installment payments.

The 14(a) Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

### 6.15. Class 15 – General Unsecured Claims

Class 15 consists of the allowed General Unsecured Creditors in the approximate amount of $10,158,000. Subject to the Plan, with respect to Disputed Claims, on the Effective Date Class 15 Claimants' shall be paid $175,000 on each December and $175,000 on each March over the five year term of the Plan, commencing in December, 2025 for a total of $1,750,000 over the term of the Plan, equaling approximately 17.23% of their claims. Said payments shall be distributed Pro Rata among the Class 15 Claimants

Class 15 is impaired and entitled to vote under the Plan

### 6.16. Class 16 – Equity Interests

Class 16 consists of the Equity Interest Holders of the Debtor.

Dan Ratner or affiliated entity shall make a $50,000 New Value Contribution to the Debtor on the Effective and shall own 100% of the reorganized Debtor.  Class 16 interests are not entitled to vote on the Plan.


## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1   Effect of Confirmation.

**A.   Effect of Confirmation.** Upon the entry of an Order of Confirmation, the Debtor shall be vested with all of the property of the Estate, subject only to outstanding liens created and/or recognized by this Plan and free and clear of all other claims, liens, encumbrances, charges and other interests of creditors, and shall be entitled to operate its business and manage its affairs free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or any local rules of the Bankruptcy Court and without further order of the Bankruptcy Court, except as otherwise expressly provided under the Plan.

**B.   Post-Confirmation Operations.** Notwithstanding the entry of an Order of Confirmation, the Debtor shall continue as Debtor-in-Possession until entry of a final decree closing this Chapter 11 case; shall have all rights and powers of a trustee serving in a case under this Chapter of the Bankruptcy Code; shall retain and remaining possession after confirmation of this Plan of all causes of action as they may have under the Bankruptcy Code; and as Debtor-in-Possession shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a Trustee in Bankruptcy. The Bankruptcy Court shall have and retain jurisdiction over such causes of action.

Although there is sufficient income to make the

**D.   Discharge of Debtor.** The Debtor will be discharged from all pre-petition obligations upon completion of the Plan.

**E.   Executory Contracts.** All executory contracts set forth on the schedule of assumed executory contracts filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing shall be deemed assumed by Debtor, as of the Effective Date, except for any executory contract (a) that has been rejected pursuant to an Order of the Bankruptcy Court entered prior to the Effective Date, or (b) as to which a motion for approval of the rejection of such executory contract, if applicable, has been filed with the Bankruptcy Court prior to the Effective Date.

**F.   Unexpired Leases.** All unexpired leases set forth on the schedule of assumed unexpired leases filed with the Bankruptcy Court prior to the

commencement of the Confirmation Hearing together with the attached schedule shall be deemed assumed by Debtor, as of the Effective Date, except for any unexpired lease (a) that has been rejected pursuant to an Order of the Bankruptcy Court prior to the Effective Date, or (b) as to which a motion for approval of the rejection of such unexpired lease, if applicable, has been filed with the Bankruptcy Court prior to the Effective Date.

**G.    Deemed Rejection.** All executory contracts and unexpired leases not specified on the schedule of assumed executory contracts and unexpired leases, filed with the Bankruptcy Court prior to the Effective Date or not previously rejected shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to a final order entered on or before the Effective Date, or (b) that is the subject of a pending motion to assume or an order relating to assumption that has not yet become a final order as of the Effective Date.

**H.    Approval of Assumption or Rejection.** Entry of the Confirmation Order shall constitute (a) the approval, pursuant to § 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan. Notwithstanding anything contained herein to the contrary, Debtor shall have the right to add or delete any executory contract or unexpired lease to the schedules filed with the Bankruptcy Court on or before the Effective Date.

**I.    Post-Petition Date Contracts and Leases.** Executory contracts and unexpired leases entered into, and other obligations incurred after the Petition Date, by Debtor shall be performed by Debtor, as applicable, in the ordinary course of their business.

**J.    Administrative Expenses.** There are no unpaid, post-petition debts. The U.S. Trustee fees will be paid by the Effective Date. Attorneys' fees will either be paid on the Effective Date or in equal installments following confirmation. To the best of the Debtor's knowledge, all post-petition creditors are being paid in the ordinary course of business and are current. All United States Trustee fees have been paid.

**K.    Continuation of Liens.** The valid liens of the secured creditors will continue throughout the life of the Plan or until the claims are paid in full.

**7.3.    Objections To Claims:** Except as otherwise provided for with respect to applications of professionals for compensation and reimbursement of expenses under Section 5.1(c) (ii) hereof, or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections to Claims, including Administrative Expense Claims, shall be filed and served upon the holder of such Claim or Administrative Expense Claim not later than the later of (a) 30 days after the Effective Date, and (b) 20 days after a proof of claim or request for payment of such Administrative Expense Claim is filed, unless this period is extended by the Court. Such extension may occur ex parte. After the Effective Date, the Reorganized Debtor shall have the exclusive right to object to the

allowance of any Claims provided for under the Plan. The Reorganized Debtor may object to the allowance of Claims with respect to which the Reorganized Debtor disputes liability in whole or in part, for whatever reasons, even if Claims were not scheduled by the Debtor as liquidated, contingent, or disputed. All Claim objections must be filed within 30 days after the Effective Date of the Plan, unless extended by the Bankruptcy Court, which extension may be granted ex parte.

**7.4.   Preservation of Rights of Action:** Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain and shall have the exclusive right to enforce any claims, rights and Causes of Action that the Debtor or the Estate may hold against any entity, including, without limitation, any claims, rights or Causes of Action arising under Chapter 5 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory.

**7.5.   Releases by Debtor**

As of the Effective Date, except for the right to enforce the Plan and any related documents, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by Debtor, the Reorganized Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or its affiliates (if any) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, *provided however,* that the releases provided herein shall apply solely to an act or omission based on or relating to the Debtor's restructuring efforts, the Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, Plan, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the pursuit of consummation of the Plan and the administration and implementation of the Plan, including but not limited to the distribution of property under the Plan or any other related agreement; *provided, further,* that the releases provided for herein shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud.

**7.6.   Exculpation and Limitation of Liability.**

The Released Parties (each, an "Exculpated Party") shall neither have nor incur any liability to any Person for any action taken or omitted to be taken after the Petition Date in connection with or related to the Debtor's restructuring efforts, the Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure

Statement, Plan, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the pursuit of consummation of the Plan and the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the benefits and protections of section 1125(e) of the Bankruptcy Code.

Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall (1) release any Person from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires act as determined by a Final Order or (2) limit the liability of the professionals of the Exculpated Parties to their respective clients pursuant to **N.Y.** Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009) or other applicable rules of professional conduct.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS OF
## PROPERTY UNDER THE PLAN

**8.1.    Delivery of Distributions:** Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made by mail (1) at the address of each such holder as set forth on the proofs of claim filed by such holders, (2) at the address set forth in any written notice of address change delivered to the Debtor or the Debtor after the date of any related proof of claim; or (3) at the address reflected in the Schedule of Assets and Liabilities filed by the Debtor if no proof of claim is filed and the Debtor has not received a written notice or address change. If any Claimholder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Debtor is notified in writing of such Claimholder's then current address.

**8.2.    Unclaimed Distributions and Uncashed Checks:** Unclaimed Cash distributions shall be held in trust in the name of the Debtor for the benefit of the potential claimants of such funds. All claims for undeliverable distributions must be made on or before the ninetieth (90th) day following the date on which such Claim is allowed. After such date, all unclaimed distributions will revert to the Debtor for deposit into the Available Cash fund to be reallocated and distributed to the holders of Allowed Claims, and the Claim of any holder with respect to such distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and such Creditor will forfeit its right to such distribution. In no event shall any funds escheat to the State of New York.

**8.3.    Compliance with Tax Requirements:** In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**8.4.    Section 1145 Exemption.**  The issuance of and the distribution under the Plan of equity interests, if any, shall be exempt from registration under the Securities Act of 1933 or applicable securities laws without further act or action by any Person pursuant to section 1145(a) of the Bankruptcy Code.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1.    Rejection of Executory Contracts and Unexpired Leases Not Assumed:** All unexpired leases and Executory Contracts listed on Debtor's schedules as well as the attached schedule of same are hereby assumed. All executory contracts and leases of the Debtor that were not previously assumed and assigned or rejected by the Debtor are deemed rejected, unless otherwise dealt with by the Plan or the Confirmation Order, or any other Order of the Court entered prior to the Effective Date. Contracts or leases that may have expired pursuant to their terms before the Effective Date and before any order of assumption or rejection are also deemed to have been rejected as of the Effective Date.

**9.2.    Claims Based on Rejection of Executory Contracts of Unexpired Leases:** Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim. Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a timely filed proof of claim.

## ARTICLE X
## EFFECT OF REJECTION BY ONE OR MORE CLASSES
## OF CLAIMS

**10.1.    Impaired Classes to Vote:** Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Debtor's Schedules.

**10.2.    Acceptance by Class of Creditors:** A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one- half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

**10.3.    Reservation of Cramdown Rights:**  In the event that any impaired class shall fail to accept this Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of the Section 1129(b) of the Bankruptcy Code.

## ARTICLE XI
## EFFECT OF CONFIRMATION

**11.1. Legally Binding Effect:** The provisions of this Plan shall bind all Creditors and Interest holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim against the Debtors or their assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

**11.2. Revesting of Property of Debtor in Debtor:** Upon the Effective Date of the Plan, all property of the Debtor's Estate shall vest in and become the property of the Debtor.

**11.3. Liens, Claims and Encumbrances:** Except as otherwise specifically provided in this Plan, or in the Confirmation Order, on the Effective Date of the Plan, all property vesting in and becoming property of the Debtor shall be free of all liens, claims and encumbrances.

**11.4. Injunction:** Except and otherwise provided in the Plan, all Claimants of the Debtor are enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against the Debtor or the Debtor's property to recover any Claim or Interest.

## ARTICLE XII
## CONDITIONS TO EFFECTIVENESS OF THE PLAN

The Plan will not be effective unless (a) the Confirmation Order becomes a Final Order; and (b) all Plan documents and other applicable corporate documents necessary or appropriate to the implementation of the Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities.

## ARTICLE XIII
## RETENTION OF JURISDICTION

**13.1. Exclusive Bankruptcy Court Jurisdiction:** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Case as is legally permissible, including, without limitation, for the following purposes:

a.      To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

b.      To ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

c.      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease;

d.      To consider and approve any modification of this Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

e.      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any entity's obligations in connection with the Plan;

f.      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor, or the Debtor;

g.      To decide or resolve any and all applications motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date or that may be brought by the Debtor after the Effective Date, including claims arising under Chapter 5 of the Bankruptcy Code;

h.      To issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. §1142 or provided by the terms of this Plan;

i.      To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan; and

j.      To enter an order closing this Chapter 11 Case.

**13.2. Limitation on Jurisdiction:** In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§157 and 1334.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1. Amendment of the Plan:** Prior to confirmation of the Plan, the Debtor may, , propose amendments to the Plan, subject to approval by the Bankruptcy Court. After Confirmation, with Court Approval, the same shall be authorized as provided by law. No post-Confirmation amendment shall materially affect treatment of any creditor in the Plan, unless same has been approved by the Bankruptcy Court. after notice and opportunity to be heard by all creditors and parties in interest.

**14.2 Due Authorization By Creditors:** Each and every Creditor who elects to participate in the Distributions provided for herein warrants that the Creditor is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Creditor under this Plan.

**14.3.  Governing Law:** Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**14.4.  Successors and Assigns:** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**14.5.  Transfer of Claims:** Any transfer of a claim shall be in accordance with Bankruptcy Rule 3001(e).

**14.6.  Notices:** Any notice required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Persons on the Post-Confirmation Service List by facsimile or computer transmission; or, (c) three days following the date the notice is sent to those Persons on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.

If to the Debtor at: and

Peter A. Pastore, Esq.
O'Connell & Aronowitz, P.C.
54 State Street
Albany, NY 12207

If to the U.S. Trustee, at:
Office of the United States Trustee
74 Chapel Street, Suite 200
Albany, NY 12207

If to any Creditor in its capacity as such, at the address or facsimile number as listed on the Post-Confirmation Claims Register.

**14.7.  U.S. Trustee Fees:** The debtor will pay pre-confirmation fees owed to the U. S. Trustee on or before the Effective Date of the Plan.

**14.8.  Implementation:** The Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**14.9.  No Admissions.**    Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any Claim's classification.

DATED: _February 18, 2025_

O'Connell & Aronowitz, P.C.

By: _____
    Peter A. Pastore, Esq.
ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION
54 State Street, 9th Floor
Albany, New York 12207
Tel. No. 518-462-5601