UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| In re: | Case No. 24-10508 (REL) (Main Case) |
| | Chapter 11 |
| CELL-NIQUE CORPORATION, *et al.* | Case No. 24-10702 |
| | Case No. 24-10775 |
| | Case No. 24-10667 |
| | Consolidated |
| Debtor. | |

**UNITED STATES TRUSTEE'S**
**OBJECTION TO AMENDED DISCLOSURE STATEMENT**

TO:   HON. ROBERT E. LITTLEFIELD, JR.
      UNITED STATES BANKRUPTCY JUDGE

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), by and through undersigned counsel Harrison E. Strauss, Trial Attorney, hereby respectfully objects the Debtors' *Amended Disclosure Statement for Consolidated Plan of Reorganization of Cell-Nique Corporation* (the "Amended Disclosure Statement"), Docket No. 65, and for his objection states and alleges as follows:

**Preliminary Statement**

The primary purpose of a disclosure statement is to provide "adequate information" to allow creditors to make an informed decision with respect to a proposed plan of reorganization. *See* 11 U.S.C. § 1125. The Debtors' Amended Disclosure Statement falls short of this standard because it omits critical information regarding proposed expansive releases for the Debtors' principal. To obtain third-party releases a disclosure statement must, at a minimum, explain the legal requirements to obtain such releases and the legal authority of the Court to grant them, as well as detailing the specific consideration provided by the released party to obtain the releases, and the process for obtaining consent of the parties. Simply put, the Amended Disclosure

1

Statement fails to adequately explain the legally complicated and difficult process of obtaining third-party releases.

In addition, the Amended Disclosure Statement supports a plan that is infeasible and unconfirmable and by its own terms will require future liquidation, or further financial reorganization. See 11 U.S.C. § 1129(a)(10). Lastly, there are other significant legal issues which should be addressed prior to approval of the Amended Disclosure Statement as detailed below.

## Factual Background

1. The four Debtors' cases were substantively consolidated by Order of this Court on November 11, 2024, Docket No. 44, including: Cell-Nique Corporation (Case No. 24-10508) (LEAD CASE); Hodgson Mill Corporation (Case No. 24-10702); Hudson River Foods Corporation (Case No. 24-10775); and Dancing Deer Corporation (Case No. 24-10667)

2. On February 18, 2025, the Debtors filed their first *Disclosure Statement For Consolidated Plan of Reorganization of Cell-Nique Corporation* ("First Disclosure Statement") (Docket No. 60), and *Chapter 11 Plan of Reorganization of Cell-Nique Corporation (*"First Plan*")* (Docket No. 61).

3. On February 28, 2025, the Debtors filed the Amended Disclosure Statement and an *Amended Plan of Reorganization of Cee-Nique Corporation* ("Amended Plan") (Docket No. 66).

4. The last day to oppose the Amended Disclosure Statement is March 26, 2025, and a hearing on the Amended Disclosure Statement is set for April 02, 2025.

## Disclosure Statement Legal Requirements

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125; *see also In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) and *In re Quiqley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

Section 1125(b) of the Bankruptcy Code requires the Bankruptcy Court to find that the disclosure statement contains the required "adequate information" before a debtor is allowed to solicit acceptance of its plan. 11 U.S.C. § 1125(b). The disclosure statement requirement of section 1125 is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)). "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with the Debtor over the plan. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94 (3d Cir. 1988).

The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove,* 860 F.2d at 100).

3

Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement as long as the additional information is accurate, and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

Moreover, Section 1129(a)(2) conditions confirmation of a plan upon compliance with applicable Code provisions. The disclosure requirement of Section 1125 is one of those provisions. *See* 11 U.S.C. § 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000). Therefore, a disclosure statement should not be approved if the plan it describes is unconfirmable on its face, because approving the disclosure statement and proceeding to a confirmation hearing would be a fruitless exercise. *In re Dow Corning Corp.*, 237 B.R. 380 (Bankr. E.D. Mich. 1999); *In re 266 Washington Assoc.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992); *In re H.K. Porter Co.*, 156 B.R. 16 (W.D. Pa. 1993); *In re Monroe Well Service*, 80 B.R. 324 (Bankr. E.D. Pa. 1987); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990); *John Hancock Mutual Life Insurance Company v. Route 37 Business Park Associates*, 987 F. 2d 154 (3d Cir. 1993).

## Argument

### A. Impermissible Third-Party Releases

The Debtor's Amended Disclosure Statement includes infinitely broad releases be imposed on all holders of claims and interests for the benefit of the Debtor's principal, Dan Ratner ("Mr. Ratner"). Amended Disclosure Statement, Page 26, Section G. These releases

4

would in effect grant Mr. Ratner, who has not filed bankruptcy and is not subject to the authority of this Court or Bankruptcy Code, a bankruptcy discharge.

The Amended Disclosure Statement fails to provide adequate information as to the legal or factual justification for these releases, including, among others, the authority for the Court to grant the same, the specific consideration provided for such releases, or the specific claims covered by such releases. See 11 U.S.C. § 1129(a)(3). In addition, an analysis of the complicated and fraught legal and factual procedure for obtaining consent for the releases, or for the ability to obtain approval of such releases without consent, is wholly absent from the Amended Disclosure Statement.

Critically, the Amended Plan seeks to bind creditors to such releases without their consent by inaccurately and inconsistently categorizing certain claimants as unimpaired and therefore not entitled to vote on the plan. Claimants listed as unimpaired include TD Bank, SBA EIDL, Pawnee, Reiser, the IRS, and the New York State Department of Taxation & Finance. Amended Disclosure Statement, Pages 13-15. However, the Plan appears to substantially alter the contractual repayment terms between the Debtor and these creditors. Confusingly, other creditors who are listed as impaired receive substantially similar treatment in the Amended Plan, and Dancing Deer, a Debtor in these consolidated cases, is listed as an impaired creditor entitled to vote. Amended Disclosure Statement, Pages 17-22.

It is therefore unclear why certain creditors are listed as impaired or unimpaired, and more importantely, it is unclear how such allegedly unimpaired creditors will evidence consent for the third-party releases if they are not entitled to vote. It should also be noted that no proposed ballot is attached to the Amended Plan or Amended Disclosure Statement.

5

B.  **Feasibility**

The Debtor's Amended Plan appears to be completely infeasible and can be described at best as an attempt to 'kick the can down the road', and at worst as being filed in bad faith. The basic structure of the Amended Plan is to make interest only payments to creditors for the first two and half years of a five-year plan, followed by two and a half years of payments based upon a ten-year amortization of the claims, followed by large balloon payments.

Debtor admits it will be unable to pay the ballon payments without further reorganization, such as the sale of the business or refinancing. Exhibit A to First Plan (Docket No. 61-1, Page 7) ("Projections"). This is a clear violation of 11 U.S.C. § 1129(a)(10). The total of proposed balloon payments is $4,635,624. Based upon the Debtor's own numbers contained in their Projections, this is $3,265,672 less than the money they will have on hand at the time the ballon payments are to be made.

Interestingly, the Debtor's income calculations appear to rely heavily on a massive one month increase in income for co-Debtor Dancing Deer in December of each year of the plan. For example, in December 2026 Dancing Deer is projected to bring in $772,550, more than 18 times the monthly average for the other 11 months of 2026 of approximately $42,000. Projections, Page 3. In December 2027 Dancing Deer is expected to bring in $844,132. However, the December 2024 monthly operating report filed with the Court only shows total income for *all four* Debtors as being $550,674, with a net loss that month of $20,963. December 2024 Consolidated Monthly Operating Report, Docket No. 59, Page 2 ("December MOR"). The bottom line is that the Debtor's projections, which show that the Debtor cannot complete plan payments without a sale of the business or substantial refinancing, do not even appear to be realistic based upon the monthly operating reports filed to date.

With regard to the filed Consolidated Monthly Operating Reports ("MORs") filed by the Debtor to date, they show that the Debtor has consistently lost money each month. The December MOR, which is the most recently filed MOR and represents a critical surplus month in the Debtor's own projections, indicates a monthly loss of $20,963, and a cumulative loss of $265,408. The November MOR shows a loss of $81,178, the October MOR a loss of $137,158, and September MOR a loss of $91,028. Based upon this, the Debtor does not appear to be able to make even the proposed monthly interest only payments for the next two-half years. Consequently, it is inappropriate to approve the Amended Disclosure Statement and seek votes in favor of the Amended Plan that is wholly infeasible.

**C.  Other Significant Issues in the Disclosure Statement and Amended Plan**

In addition to the above, there are other significant issues in the Amended Disclosure Statement and Amended Plan which should be addressed prior to approval of the Amended Disclosure Statement. First, the Amended Disclosure Statement appears to include Dancing Deer, a co-Debtor in this case, as a creditor to receive on going payments. Amended Disclosure Statement, Page 21, Paragraph 10. The Debtors therefore intend to pay themselves through the plan and there is no explanation in the Amended Disclosure Statement as to why this is occurring or is appropriate.

Second, the Debtors failed to attach a liquidation analysis, financial projections, or a copy of the proposed ballet to the Amended Disclosure Statement or Amended Plan, and the Amended Disclosure Statement and Amended Plan captions contain an incorrect case number for co-Debtor Dancing Deer.

Lastly, the Debtors have failed to file the two most recent MORs for the months of January and February 2025 and are delinquent in United States Trustee Quarterly fees totaling $12,085.00. Both of these issues must be remedied prior to confirmation of any plan.

7

**Conclusion**

The Debtors' Amended Disclosure Statement fails to provide adequate information regarding potentially impermissible third-party releases for Debtors' principal including the legality or implications of such releases, or how the intends to obtain consent from all parties subject to the releases. Further, the Amended Disclosure Statement supports a plan that is completely infeasible and that can't be funded without further reorganization of the Debtor via sale or refinance. Lastly, there are significant outstanding legal issues, such as unfiled MORs and unpaid UST Quarterly Fees, which should be addressed prior to approval of the Amended Disclosure Statement or the solicitation of votes in favor of the Amended Plan.

**WHEREFORE,** based on the foregoing, the United States Trustee respectfully requests that the Court reject the proposed Amended Disclosure Statement, and for such other and further relief as the Court deems just and proper.

Dated: March 26, 2025
Albany, New York

    Respectfully submitted,

    WILLIAM K. HARRINGTON
    UNITED STATES TRSUTEE, REGION 2

    */s/ Harrison E. Strauss*
    Harrison E. Strauss - Trial Attorney
    OFFICE OF UNITED STATES TRUSTEE
    Leo O'Brien Federal Building
    11A Clinton Ave., Room 620
    Albany, New York 12207
    NDNY Bar Roll No. 705825
    (518) 434-4553
    Harrison.Strauss@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on Tuesday, March 25, 2025, a true and correct copy of the foregoing *United States Trustee's Amended Objection to Disclosure Statement* was served electronically upon all parties receiving electronic notice in this case including:

Cathleen B Clark cathleen.b.clark@usdoj.gov;CaseView.ECF@usdoj.gov, Melissa.O'Hora@usdoj.gov

Kileen C. Davies kileen.davies@tax.ny.gov

Marco B. Koshykar mkoshykar@woh.com, spaulsen@nhkllp.com

Peter A. Pastore papastore@oalaw.com, asullivan@oalaw.com

Teresa Sadutto-Carley tsadutto@platzerlaw.com

Charles J. Sullivan.csullivan@bsk.com, kdoner@bsk.com;jhunold@bsk.com;CourtMail@bsk.com

I hereby certify that on Tuesday, March 25, 2025, a true and correct copy of the foregoing *United States Trustee's Amended Objection to Disclosure Statement* was served via First Class Mail upon the following parties:

Cell-Nique Corporation
22 Hamilton Way
Castleton, NY 12033

                                                      /s/ Harrison E. Strauss
                                                      Harrison E. Strauss, Trial Attorney