Bethany D. Simmons, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

*Counsel for Dancing Deer Baking Company LLC*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELL-NIQUE CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10508-1 (REL) (main case)<br>Case No. 24-10702<br>Case No. 24-10775<br>Case No. 24-10677<br>(Consolidated) |

**OBJECTION OF DANCING DEER BAKING COMPANY, LLC TO**
**APPROVAL OF AMENDED DISCLOSURE STATEMENT FOR CONSOLIDATED**
**PLAN OF REORGANIZATION OF CELL-NIQUE CORPORATION**

Dancing Deer Baking Company, LLC ("**Secured Creditor**"), by its undersigned counsel, hereby submits this objection (the "**Objection**") to approval of the *Amended Disclosure Statement for Consolidated Plan of Reorganization of Cell-Nique Corporation* (the "**Disclosure Statement**") [ECF # 65] filed in support of the *Amended Plan of Reorganization of Cell-Nique Corporation* (the "**Proposed Plan**") [ECF # 66].  In support of its Objection, Secured Creditor respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Disclosure Statement fails to provide adequate disclosure of accurate information sufficient to enable creditors to make an informed judgment regarding the Proposed Plan and so cannot be approved.  The Debtors failed to include (1) a sufficient description of their proposed reorganized business, (2) projections demonstrating an ability to make the payments

under the Proposed Plan over the five year term, (3) an adequate liquidation analysis demonstrating that secured creditors will receive more under the Proposed than they would in the event the Debtors were liquidated, (4) any basis for the estimated amount of value of secured creditors' claims, including the claim of Secured Creditor, or (5) any analysis to demonstrate the sufficiency of the new value contribution by old equity. As a result of these and other omissions and misstatements discussed in greater detail below, it is impossible for a "hypothetical reasonable investor" to make an informed judgment about the Proposed Plan, and the Disclosure Statement cannot be approved.

2. In addition, for each of the reasons that the Disclosure Statement is inadequate, the Proposed Plan being described is also fatally flawed. Among other issues, the Debtors cannot show that the Proposed Plan is feasible, that it meets the best interests of creditors test, or that it is fair and equitable. Because the Proposed Plan described by the Disclosure Statement is fatally flawed, the law is clear that the Court should not permit Debtors to waste estate funds and resources soliciting a plan that could never be confirmed.

## FACTUAL BACKGROUND

3. Cell-Nique Corporation (the "**Cell-Nique**") filed for relief under Chapter 11 of the Bankruptcy Code on May 9, 2024. Dancing Deer Corporation (the "**DDC**" and, with Cell-Nique, the "**Debtors**") filed for relief under Chapter 11 of the Bankruptcy Code on June 13, 2024 (the "**Petition Date**").

4. Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. As of the Petition Date, the Debtors owed Secured Creditor not less than $4,593,952.32, plus additional unpaid interest, fees, costs, charges and expenses (collectively, the

"**Indebtedness**"). The Indebtedness is owed on account of that certain Tranche 1 Junior Secured Promissory Note, that certain Tranche 2 Junior Secured Promissory Note, and that certain Tranche 3 Junior Secured Promissory Note, each dated as of December 31, 2018, which were executed by DDC in connection with its purchase of assets from Secured Creditor. The Indebtedness is owed by Cell-Nique on account of that certain Guaranty, dated as of December 31, 2018, which was executed by Cell-Nique in connection with the asset purchase by DDC.

6. Secured Creditor's claim against DDC is secured as evidenced by a UCC-1 Financing Statement filed as Document Number 2019 7930857 on November 11, 2019 with the Delaware Secretary of State.

7. Secured Creditor timely filed a proof of claim against Cell-Nique on August 7, 2024 as Claim No. 15.

8. Secured Creditor timely filed a proof of claim against DDC on September 11, 2024 as Claim No. 4.

9. The Debtors filed the Disclosure Statement and Proposed Plan on February 28, 2025. The Debtors classified Secured Creditor's claim in Class 10 under the Proposed Plan. The Debtors propose to provide Secured Creditor with an allowed secured claim of $150,000, to make monthly interest payments of $625 over sixty months to Secured Creditor, and to make a ballon payment of $150,000 to Secured Creditor at the end of month sixty. *See* Proposed Plan at 18. The Debtors propose to treat the remaining balance of the Indebtedness as a general unsecured claim. *See id.*

10. Contemporaneous with filing this Objection, Secured Creditor has filed a *Notice of Election Pursuant to Section 1111(b)(2)*, which provides notice that Secured Creditor elects the

application of section 1111(b)(2) as it pertains to its claim in connection with the Proposed Plan and Disclosure Statement.

# OBJECTION

### I. The Court Should Deny Approval of the Disclosure Statement Because it Does Not Contain Adequate Information.

11. The Disclosure Statement fails to satisfy the standards imposed by section 1125 of the Bankruptcy Code. Adequate disclosure is one of the fundamental policies underlying the Chapter 11 reorganization process. *See In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988). "Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). "At the 'heart' of the chapter 11 process is the requirement that holders of claims in impaired classes be furnished a proper disclosure statement that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan." *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) (internal quotations omitted).

12. Accordingly, pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent cannot disseminate a disclosure statement to solicit acceptances to any plan unless the Court finds that the disclosure statement contains "adequate information" to enable creditors to make an informed judgment on the plan. 11 U.S.C. § 1125(b). The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records,…that would enable a hypothetical [reasonable] investor [typical of claims or interests in] the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1). Simply put, a proper disclosure statement should clearly and succinctly set forth the factors that bear "upon the success or failure of the proposals contained in the plan." *Scioto Valley*, 88 B.R. at 170.

13. The Disclosure Statement does not meet these most basic requirements for at least five reasons.

14. *First*, courts have refused to approve disclosure statements that fail to provide meaningful disclosure about a debtor's ability to fund its plan. *See, e.g., In re Construction Supervision Services, Inc.*, No. 12-00569-8-RDD, 2012 Bankr. Lexis 4564 (Bankr. E.D. N.C. 2012); *In re Made in Detroit, Inc.*, 299 B.R. 170, 176-77 (Bankr. E.D. Mich. 2003) (noting that "Section 1129(a)(11) prevents confirmation of visionary schemes …," the court refused to confirm a plan based on "wishful thinking" and "visionary promises"). The Debtors here failed to file any projections whatsoever to demonstrate that they will be able to make the monthly payments provided for under the Plan to secured creditors, that they will be able to make the bi-annual payments to general unsecured creditors, or that they have any hope of obtaining refinancing in five years that would be sufficient to make the millions of dollars in balloon payments that the Proposed Plan requires.

15. *Second*, one of the most basic requirements for a disclosure statement is to provide sufficient information for the holders of claims and interests to evaluate the future potential viability of the reorganized debtors. *See* 11 U.S.C. § 1125(a)(1); *In re Source Enters.*, No. 06-11707, 2007 Bankr. LEXIS 4770, at *7 (Bankr. S.D.N.Y. July 31, 2007) (noting that one of the "factors which Bankruptcy Courts have used to evaluate the sufficiency of disclosures includ[es], among others, . . . 'any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan.'") (quoting *In re Scioto*

*Valley Mortg. Co.*, 88 B.R. at 170). Yet a sufficient description of the Debtors' business and the changes (if any) to their business that will facilitate any reorganization are conspicuously absent from the Disclosure Statement. The Debtors do not even may any disclosures regarding their past performance, their performance during the Chapter 11 case, or their expect performance if the Proposed Plan is confirmed.

16. *Third*, if a creditor is impaired, the best interest of creditors test under section 1129(a)(7) of the Bankruptcy Code provides that a plan can only be approved if the creditor either accepts the plan or receives an amount equal to or greater than the amount the creditor would receive if the debtor were liquidated under chapter 7. *See* 11 U.S.C. § 1129(a)(7)(a). The Debtors did not even attempt to meet this requirement. The Debtors liquidation analysis addresses only unsecured creditors and does not show how Secured Creditor would be better off under the Proposed Plan than if the Debtors were liquidated. In any event, the Secured Creditor will not vote to accept the Proposed Plan, and Debtors have not shown and will not be able to demonstrate that the Secured Creditor would receive under the Plan an amount greater than or equal to the amount the Secured Creditor would receive if Debtors were liquidated. In a liquidation scenario, the Secured Creditor could immediately take back and liquidate its collateral. Under the Proposed Plan, the Secured Creditor is expected to accept meager payments of $625 per monthly for five years and a final payment of only $150,000 as compared to its more than $4,593,952 claim. *See* Proposed Plan at 18.

17. *Fourth*, section 1129(b)(2)(B)(ii) provides that equity can only retain its interests if all other classes are first repaid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). If old equity is going to retain its interests despite the absolute priority rule, the Proposed Plan and the equity contribution thereunder, must meet the requirements of the "new value" exception, which requires that the

contribution must be "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving." *BT/SAP Pool C Assocs., L.P. v. Coltex Loop Cent. Three Partners, L.P.*, 203 B.R. 527, 534 (S.D.N.Y. 1996), *aff'd Coltex Loop Cent. Three Partners, L.P. v. BT/SAP Pool C Assocs., L.P. (In re Coltex Loop Cent. Three Partners, L.P.)*, 138 F.3d 39 (2d Cir. 1997). Recognizing that creditors are not going to be paid in full, the Debtors propose that Physician Capitol Corporation will provide $250,000 in new value to retain their interests. *See* Proposed Plan at 21. Confusingly, the Disclosure Statement provides that a different entity, PCC Castelton Corporation, already provided $200,000 to the Debtors and will provide an additional $50,000 on the Effective Date of the Proposed Plan. *See* Disclosure Statement at 24. Regardless of the entity providing new value, the Debtors do not provide any support whatsoever in the Disclosure Statement to demonstrate that the new value contribution proposed to be made by any old equity is in any way sufficient.

18.     *Fifth*, the Debtors propose to treat most secured creditors, including Secured Creditor, as substantially undersecured without any discussion or related data supporting the proposed allowed secured claim amounts. Moreover, given Secured Creditor's election pursuant to section 1111(b)(2) of the Bankruptcy Code, the proposed treatment for Secured Creditors claim is unacceptable in any event.

19.     For each of these independent reasons, the Disclosure Statement is inadequate and cannot be approved.

## II.    The Disclosure Statement Should Not be Approved Because the Proposed Plan is Patently Unconfirmable.

20.     The Disclosure Statement should not be approved because the Proposed Plan is fatally flawed. It is well-settled that, when a chapter 11 plan is so deficient that it cannot be confirmed, the Court should refuse to approve a disclosure statement based on that plan. *See*, *e.g.*,

*In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (where "it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.") (quotations omitted); *In re Mkt. Square Inn*, 163 B.R. 64, 67-68 (Bankr. W.D. Pa. 1994) (denying approval of disclosure statement where illegal releases rendered plan unconfirmable); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If the Court can determine from a reading of the plan that it does not comply with § 1129 of the Bankruptcy Code, then it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate.").

21. This rule is based on the common-sense idea that it would be imprudent to undertake the burden and expense of distributing and soliciting votes on, and potentially litigating over, a plan that legally cannot be confirmed, since this exercise in futility would only lead to further delays and unnecessary expense in Debtors' attempts to reorganize. *See In re Am. Capital Equip., LLC*, 688 F.3d at 154 ("The rationale is that the court's equitable powers under 11 U.S.C. § 105 'surely enable it to control its own docket' and thus, a '[c]ourt [should] not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable[.]'") (quoting *In re Kehn Ranch, Inc.*, 41 B.R. 832, 832-33 (Bankr. S.D. 1984)).

22. As a result of the issues discussed above, the Proposed Plan is unconfirmable. Among other fatal flaws, Debtors fail to show that the Proposed Plan is feasible, meets the best interests of creditors test, and is fair and equitable. As a result, approval of the Disclosure Statement would result in just the type of "exercise in futility" the law seeks to avoid. Accordingly, the Court should not approve the Disclosure Statement.

**CONCLUSION**

WHEREFORE, the Secured Creditor respectfully requests that the Court (i) sustain this Objection, (ii) not approve the Disclosure Statement, and (iii) grant the Secured Creditor such other and further relief as is just and proper.

Dated:      March 26, 2025
            New York, New York

                              Respectfully submitted,

                              **LOEB & LOEB LLP**

                              By: */s/* Bethany D. Simmons
                                  Bethany D. Simmons
                                  345 Park Avenue
                                  New York, New York  10154
                                  (212) 407-4000