UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In Re:

CELL-NIQUE CORPORATION, et al,

                          Debtors.

_____

Chapter 11
Case Number: 24-10508-1 (REL)
 (Main Case)
Case Number:  24−10702
Case Number:  24-10775
Case Number:  24−10677
Consolidated

## AMENDED DISCLOSURE STATEMENT
## FOR CONSOLIDATED PLAN OF REORGANIZATION OF CELL-NIQUE CORPORATION

## ARTICLE 1
## INTRODUCTION

Cell-Nique Corporation (the "Debtor"), as Debtor and Debtor-in-Possession submits this Disclosure Statement pursuant to Bankruptcy Code Section 1125 for use in the solicitation of votes on the Plan of Reorganization (the "Plan").

This Disclosure Statement sets forth certain relevant information regarding the Debtor's prepetition operations and financial history, the need to seek Chapter 11 protection, significant events that have occurred during the Chapter 11 case, an analysis of the expected return to the Debtor's creditors and the projected revenues of the Reorganized Debtor. This Disclosure Statement also describes terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan.  Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims and Interests must follow for their votes to be counted.

### A.    Filing of the Debtor's Chapter 11 Case

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 9, 2024 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of New York, Albany Division (the "Bankruptcy Court").  Since the Petition Date, the Debtor has continued to operate its business and manage its properties and assets as Debtor-in-Possession pursuant to Bankruptcy Code Sections 1107 and 1108.

Cell-Nique is a holding company that directly owns the three (3) other Debtors. Specifically, Cell-Nique directly owns all of the outstanding stock of Hudson, Hodgson, and Dancing Deer as subsidiaries of Cell-Nique (collectively the "Subsidiaries").  The Debtor

1

previously filed a bankruptcy petition that was dismissed without prejudice to filing all four (4) entities. The Debtors understood that the prior bankruptcy of Cell-Nique presented a confusing scenario due to the failure of the Subsidiaries to file. All four (4) companies have now filed separate petitions for Chapter 11 relief and the Court granted Debtor's motion to substantively consolidate. This disclosure statement and plan is for the consolidated Debtors and all references to Debtor necessarily involves all four consolidated debtors.

**B.      Purpose of Disclosure Statement and Hearing for Approval**

Section 1125 of the Bankruptcy Code requires the Debtor to prepare and obtain court approval of a Disclosure Statement as a prerequisite to soliciting votes on the Debtor's Plan. The purpose of the Disclosure Statement is to provide information to Creditors and Interest holders (shareholders) that will assist them in deciding how to vote on the Plan.

The Bankruptcy Court has set _____, **at 10:30 a.m.** as the date for a hearing to approve the Disclosure Statement.  Such approval does not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereunder.  The Court's approval does indicate, however, that the Bankruptcy Court has determined that the Disclosure Statement contains adequate information to permit you to make an informed judgment regarding acceptance or rejection of the Plan.

**This Disclosure Statement is Not Being Solicited Unless and Until Approved by the Bankruptcy Court. The Approval By The Bankruptcy Court Of This Disclosure Statement Does Not Constitute An Endorsement By The Bankruptcy Court Of The Plan Or A Guarantee Of The Accuracy Or Completeness Of The Information Contained Herein.  The Material Contained Herein Is Intended Solely For The Use Of Creditors And Holders Of Interests Of The Debtor In Evaluating The Plan And Voting To Accept Or Reject The Plan And, Accordingly, May Not Be Relied On for Any Purpose Other Than The Determination Of How To Vote On, Or Whether To Object To, The Plan.**

**The Debtor Believes That The Plan And The Treatment Of Claims And Interests Thereunder Is In The Best Interests Of Claimholders And Interest Holders And Urge That You Vote To Accept The Plan.**

**This Disclosure Statement Has Not Been Approved Or Disapproved By The Securities And Exchange Commission, Nor Has The Commission Passed On The Accuracy Or Adequacy Of The Statements Contained Herein.  Any Representation To The Contrary Is Unlawful.  The Plan Should Be Reviewed Carefully.**

**C.      Hearing On Confirmation of the Plan**

The Bankruptcy Court has set _____, **at \*\***., as the time and date for the hearing (the "Confirmation Hearing") to determine whether the Plan has been accepted by the requisite number of Claimholders and whether the other standards for

2

Confirmation of the Plan have been satisfied.  Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice.

**D.     Sources of Information**

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, properties and management, and the Plan have been prepared from information furnished by the Debtor.  The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified.

**ARTICLE 2**
**EXPLANATION OF CHAPTER 11**

**A.     Overview of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor-in-possession may seek to reorganize its business or to sell the business for the benefit of the debtor's creditors and other interested parties.

The commencement of a Chapter 11 case creates an estate comprising all of the debtor's legal and equitable interests in property as of the date the petition is filed.  Unless the Bankruptcy Court orders the appointment of a trustee, a Chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor-in-possession", as the Debtor has done in this case since the Petition Date.

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 case.  The plan sets forth the means for satisfying the claims of creditors against, and interests of equity security holders in, the debtor.

**B.     Plan Of Reorganization**

The Debtor's Plan does, in fact, provide for a comprehensive reorganization of debts over a 5 year period.

After the plan has been filed, the holders of claims against, or interests in, a debtor are generally permitted to vote on whether to accept or reject the plan.  Chapter 11 does not require that each holder of a claim against, or interest in, a debtor vote in favor of a plan in order for the plan to be confirmed.  At a minimum, however, a plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting from at least one class of claims impaired under the plan.

Classes of claims or interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and therefore are not entitled to vote.  A class is "impaired" if the plan modifies the legal, equitable, or contractual rights attaching to the claims or interests of that class.  The claims of the unsecured creditors of this Debtor are impaired and will not receive the full value of their claims.  Classes of claims or interests that receive or retain no property under a plan of reorganization are conclusively presumed to have rejected the plan and therefore are not entitled to vote.  The class including the shareholders of the Debtor is not receiving anything under the Plan and is deemed to have rejected the Plan.

3

## ARTICLE 3
## VOTING PROCEDURES AND CONFIRMATION
## REQUIREMENTS

**A.    Ballots and Voting Deadline**

A ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement, and has been mailed to Claimholders (or their authorized representatives) entitled to vote. After carefully reviewing the Disclosure Statement, including all exhibits, each Claimholder (or its authorized representative) entitled to vote should indicate its vote on the enclosed ballot. All Claimholders (or their authorized representatives) entitled to vote must (i) carefully review the ballot and instructions thereon, (ii) execute the ballot, and (iii) return it to the address indicated on the ballot by the deadline (the "Voting Deadline") for the ballot to be considered.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____ **at 5:00 p.m.** at the following address:

> O'Connell & Aronowitz
> Attn:   Peter A. Pastore, Esq.
> 54 State Street, 9th Floor
> Albany, New York 12207

**BALLOTS MUST BE RECEIVED AT THE ABOVE ADDRESS NO LATER THAN _____ AT 5:00 P.M.   ANY BALLOTS RECEIVED AFTER THAT DEADLINE WILL NOT BE COUNTED.**

**B.    Claimholders and Interest Holders Entitled to Vote**

Any Claimholder of the Debtor whose claim is impaired under the Plan is entitled to vote if either (i) the Debtor has scheduled the Claimholder's Claim (and such Claim is not scheduled as disputed, contingent, or unliquidated) or (ii) the Claimholder has filed a Proof of Claim on or before the deadline set by the Bankruptcy Court for such filings. Any holder of a Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court (on motion by a party whose Claim is subject to an objection), temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Such motion must be heard and determined by the Bankruptcy Court before the first date set by the Bankruptcy Court for the Confirmation Hearing on the Plan. In addition, a Claimholder's vote may be disregarded if the Bankruptcy Court determines that the Claimholder's acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

The Debtor's Interest Holders shall not receive any distribution under the Plan. Accordingly, all such Interest Holders are deemed to have rejected the Plan and are not entitled to vote on the Plan.

4928-1148-0391, v. 3

### C.      Bar Date for Filing Proofs of Claim

The Bankruptcy Court established a bar date for filing proofs of claim or interests in the Debtor's Chapter 11 case of August 7, 2024, for any nongovernment entities and November 5, 2024, for any government entities.

### D.      Classes Impaired Under the Plan

Claims or Interests in Classes 1 and Classes 3 through 15 are impaired under the Plan and are eligible to vote to accept or reject the Plan.  Holders of Claims in Class 2 and 16 are insiders, and may not vote on the Plan.  Interest holders within Class 16 will not receive any distributions under the Plan.   As such, Interest holders within Class 16 are conclusively presumed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

### E.      Information on Voting and Ballots

#### 1.      Ballot Tabulation Procedures

For purposes of voting on the Plan, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows:

(a)      If no Proof of Claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules of Assets and Liabilities, as and if amended, to the extent such Claim is not listed as contingent, unliquidated, or disputed, and the Claim shall be placed in the appropriate Class, based on the Debtor's records, and consistent with the Schedules of Assets and Liabilities and the Claims registry of the Clerk of the Bankruptcy Court (the "Clerk");

(b)      If a Proof of Claim has been timely filed, and has not been objected to before the expiration of the Voting Deadline, the voted amount of that Claim shall be as specified in the Proof of Claim filed with the Clerk;

(c)      Subject to subparagraph (d) below, a Claim that is the subject of an objection filed before the Voting Deadline shall be disallowed for voting purposes, except to the extent and in the manner that the Debtor indicates in its objection that the Claim should be allowed for voting or other purposes;

(d)      If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the voted amount and classification shall be that set by the Bankruptcy Court;

(e)      If a Claimholder or its authorized representative did not use the Ballot or Master Ballot form, as applicable, provided by the Debtor, the Official Ballot Form authorized under the Federal Rules of Bankruptcy Procedure or a substantially similar form of ballot, such Ballot will not be counted;

(f)      If the Ballot is not received by the Debtor on or before the Voting Deadline at the place fixed by the Bankruptcy Court, the Ballot will not be counted;

5

(g)     If the Ballot is not signed by the Claimholder or its authorized representative, the Ballot will not be counted;

(h)     If the individual or institution casting the Ballot (whether directly or as a representative) was not the holder of a Claim on the Voting Record Date (as that term is defined below), the Ballot will not be counted;

(i)     If the Claimholder or its authorized representative did not check one of the boxes indicating acceptance or rejection of the Plan, or checked both such boxes, the Ballot will not be counted;

(j)     Whenever a Claimholder (or its authorized representative) submits more than one Ballot voting the same Claim(s) before the applicable deadline for submission of Ballots, except as otherwise directed by the Bankruptcy Court after notice and a hearing, the last such Ballot shall be deemed to reflect the voter's intent and shall supersede any prior Ballots.

## 2.     Execution of Ballots by Representatives

If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such persons must indicate their capacity when signing and, at the Debtor's request, must submit proper evidence satisfactory to the Debtor of their authority to so act.

## 3.     Changes to Ballots

Any Claimholder (or its authorized representative) who has previously submitted a properly completed Ballot to counsel for the Debtor before the Voting Deadline may revoke such Ballot and change its vote by submitting to counsel for the Debtor before the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.

## F.     Confirmation of Plan

### 1.     Solicitation of Acceptances

The Debtor is soliciting your vote. The Debtor will bear the cost of any solicitation by the Debtor. No other additional compensation shall be received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

No Representations Or Assurances, If Any, Concerning The Debtor Or The Plan Authorized By The Debtor Other Than As Set Forth In This Disclosure Statement. Any Representations Or Inducements Made By Any Person To Secure Your Vote Other Than Those Contained In This Disclosure Statement Should Not Be Relied On By You In Arriving At Your Decision, And Such Additional Representations Or Inducements Should Be Reported To Counsel For The Debtor For Such Action As May Be Deemed Appropriate.

This Is A Solicitation Solely By The Debtor, And Is Not A Solicitation By Any Shareholder, Attorney, Or Accountant For The Debtor. The Representations, If Any, Made Herein Are Those Of The Debtor And Not Of Such Shareholders, Attorneys, Or Accountants, Except As May Be Otherwise Specifically And Expressly Indicated.

4928-1148-0391, v. 3

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation. This solicitation of votes on the Plan is governed by Bankruptcy Code Section 1125(b). Violation of Bankruptcy Code Section 1125(b) may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

**2.      Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code Section 1129 have been satisfied, in which event the Bankruptcy Court shall enter an Order confirming the Plan. For the Plan to be confirmed, Bankruptcy Code Section 1129 requires that:

(i)      The Plan comply with the applicable provisions of the Bankruptcy Code;

(ii)      The Debtor has complied with the applicable provisions of the Bankruptcy Code;

(iii)      The Plan has been proposed in good faith and not by any means forbidden by law;

(iv)      Any payment or distribution made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expense in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(v)      The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and Interest Holders and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider;

(vi)      With respect to each impaired Class of Claims or Interests, either each holder of a Claim or Interest of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code. If Bankruptcy Code Section 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that Claim;

(vii)      Each Class of Claims or Interests has either accepted the Plan or is not impaired under the Plan;

(viii)    Except to the extent that the holder of a particular Administrative Claim or Priority Claim has agreed to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Claims shall be paid in full on the Effective Date or the Allowed Date;

(ix)    If a Class of Claims or Interests is impaired under the Plan, at least one such Class of Claims or Interests that is entitled to vote has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class; and

(x)    Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for confirmation and that the Plan was proposed in good faith. The Debtor believes it has complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

**3      Best Interest Test.**

The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the chapter 7 case.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.   In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation.  Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys,

8

financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to section 1102 of the Bankruptcy Code.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of the Debtor's assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, (iii) the potential increases in Claims which would be satisfied on a priority basis or on a parity with the Claims of General Unsecured Creditors and (iv) the substantial amount of secured obligations in this case, the Debtor believes that in a chapter 7 liquidation there would be insufficient funds available to satisfy all of the administrative and secured debt on the Property and no funds would be available for distribution to unsecured creditors.

**Liquidation Analysis.**

Under the provisions of § 1129 (a)(7) of the Code as amended, a plan of reorganization may be confirmed if, inter alia the holders of impaired claims accept the Plan or will receive under the Plan "property of a value. that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 "

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired Class and that claimant or interest holder does not vote to accept the plan, then that claimant or interest holder must receive or retain under the plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a Chapter 7 trustee usually sells the Debtor's assets.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.    Administrative claims are paid next.   Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.   Unsecured creditors with the same priority share in proportion to the amount of their allowed interest only claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this plan, the Court must find that all creditors and interest holders who do not accept the plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.   The Debtor maintains that this requirement is met here for the following reasons:  The Debtor's primary assets is the Equipment, receivables and cash, all of which are encumbered in first and 2nd lien positions by multiple secured creditors,  as well as a secured tax lien in favor of the Internal Revenue Service.

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the Bankruptcy Estate in an amount not to exceed 25% on the first $5,000 of moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million and 3% on all amounts over $1 million.

Based upon the assumption that in a Chapter 7 proceeding, the liquidation value could be obtained, and further assuming that there would be normal costs of sale and other costs of

9

administration attendant to the Chapter 7 proceeding, there would not be sufficient proceeds generated by a sale (at an estimated liquidation value equal to 50% of the Debtors assets) to pay any secured creditor in full, other than the Class 13 Creditor (Internal Revenue Service secured Tax Lien) Moreover, the secured Claimants in Class 1, Class 3, Class 4, Class 5, Class 9 to Class 12 would receive approximately three to ten percent (3% - 10%) or less of their secured claims while all other Secured Classes and the unsecured creditors of the Debtor's estate would receive a 0% distribution were this Chapter 11 proceeding converted to one under Chapter 7 of the Code. (See Liquidation Analysis Spreadsheet Exhibit attached hereto and incorporated by reference.)

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is met here since the plan, provides for a one hundred percent (100%) distribution to the Secured Class Claimants (other than insider Claimant in Class 2) and a 6.41% distribution to the unsecured Creditors.

### 4.    Acceptances Necessary to Confirm the Plan

Voting on the Plan by each holder of a Claim (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of the Plan in order for the Court to confirm the Plan. Generally, to be confirmed under the acceptance provisions of Bankruptcy Code Section 1126(a), the Plan must be accepted by each Class of Claims that is impaired under the Plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan. Even if all Classes of Claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan.

### 5.    Cramdown

In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its claims or equity interests. "Fair and equitable" has different meanings for holders of secured and unsecured claims and equity interests.

With respect to a secured claim, "fair and equitable" means either (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claims with a present value as of the effective date of the plan at least equal to the value of such creditor's interest in the property securing its liens, (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan. With respect to an unsecured claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its allowed claim or (ii) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to equity interests, "fair and equitable" means either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the equity interest; or (ii) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any property.

In the event at least one Class of impaired Claims or Interests rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Interests.

The Debtor believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class of Claims and Interests.

**6.      Confirmation Without the Acceptance of Each Impaired Class.**

In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.   The Debtor believes that the Plan is in the best interest of all Creditors and Interest holders and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan.  Nevertheless, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

**ARTICLE 4**
**BACKGROUND OF THE DEBTOR**

**A.      Nature of the Debtor's Business**

Debtor sells and manufactures food and beverage directly to consumers, retail stores as well as co-manufacturing and private label. Debtor served a wide base of national retailers. The company is based in Castleton, New York, and was founded in 2005 by Dan Ratner. Dan Ratner is the current President of the Debtor and through affiliate ownership  has a super majority share of the Debtor's preferred and common stock.

**B.      Existing and Potential Litigation/Proceedings**

The Debtor may potentially be a plaintiff in other lawsuits, claims, and administrative proceedings. While the outcome of those proceedings cannot be predicted with certainty, the Debtor reasonably estimates that the recoveries generated from, and/or the costs associated with pursuing, those claims will not materially affect the financial condition of the Debtor or the distributions to be made under the Plan.

4928-1148-0391, v. 3

### C.    Assets of the Debtor

The chief assets of the Debtor are: (1) personal property located at 22 Hamilton Way, Castleton, NY 12033; (2) certain accounts receivable; (3) Inventory; (4) a pending default judgment against Hodgson Mill Incorporated, in the amount of $5,765,541; (5) cash on hand; (6) 100% Capital Stock of wholly owned subsidiaries and (7) IRS Net Operating Loss carry forward credits.

Aside from the above mentioned assets, the Debtor has few, if any, assets.

### ARTICLE 5
### EVENTS LEADING TO BANKRUPTCY

Debtor was impacted by Covid pandemic which resulted in reduction of traditional social gathering and consumption of Debtors products. The Debt expanded the business in 2021 to co-manufacture and private label which has expanded sales and is the primary basis of the Plan of Reorganization. As a result the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 9, 2024 in the United States Bankruptcy Court for the Northern District of New York, Albany Division.

### ARTICLE 6
### POST-BANKRUPTCY OPERATIONS AND SIGNIFICANT
### EVENTS

### A.    Post-Bankruptcy Operations

Before the bankruptcy filing and thereafter, the Debtor and its professionals focused their efforts on expanding sales to new and existing customers.

The Debtor has continued to operate and maintain its business as a debtor-in-possession pursuant to Sections 1107 (a) and 1108 of the Bankruptcy Code.

### B.    Professional Fees and Expenses

Pursuant to an order entered by the Bankruptcy Court on June 7, 2024, the Debtor retained O'Connell & Aronowitz, P.C. to serve as general bankruptcy counsel.

### ARTICLE 7
### DESCRIPTION OF THE PLAN

### A.    Introduction

A summary of the principal provisions of the Plan and the treatment of Classes of Allowed Claims and Interests is set out below. This Disclosure Statement is only a summary of the terms of the Plan and is entirely qualified by the Plan; it is the Plan and not the Disclosure Statement that governs the rights and obligations of the parties.

The Plan seeks to distribute all value in the Debtor's estate to creditors according to the priority scheme established by the Bankruptcy Code.

**B.      Designation of Claims and Interests**

The following is a designation of the classes of Allowed Claims and Interests under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Unsecured Tax Claims described in this Article 7, have not been classified and are excluded from the following classes. An Allowed Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Allowed Claim or Interest qualifies within the description of such other class or classes. An Allowed Claim or Interest is classified in a particular class only to the extent that the Allowed Claim or Interest in that class has not been paid, released, or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class. Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Interest.

| Class | Status |
|---|---|
| **I.      Secured Claims** | |
| Class 1:  Secured Claim of Creditor New York Business Development Corporation | Impaired -  Entitled to vote; to be paid in accordance with Plan. |
| Class 2:  Secured Claim of Creditor Physicians Capitol Corporation | Insider Claim- not entitled to vote; and shall receive no payments over the 5 year term of the Plan. |
| Class 3:  Secured Claim of Creditor Berkshire Bank | Impaired –Entitled to vote; to be paid in accordance with Plan on an impaired claim of $2,243,030 |
| Class 4:  Secured Claim of Creditor TD Bank | Impaired – Entitled to vote; to be paid in accordance with the Plan on an impaired claim of $112,596 |
| Class 5:  Secured Claim of Creditor SBA EIDL | Impaired – Entitled to vote; to be paid in accordance with Plan on an impaired claim of $166,875 |
| Class 6:  Secured Claim of Creditor MCA Capital Assist | Impaired - Entitled to vote; to be paid in accordance with Plan on an impaired claim of $31,671.20 |
| Class 7:  Secured Claim of Creditor MCA Parkside | Impaired - Entitled to vote; to be paid in accordance with Plan on an impaired claim of $42,457.50 |
| Class 8:  Secured Claim of Creditor MCA CFG | Impaired - Entitled to vote; to be paid in accordance with Plan on an impaired claim of $88,518.21 |

13

| Class | Status |
|---|---|
| Class 9:  Secured Claim of Creditor Pawnee | Impaired – Entitled to vote; to be paid in accordance with Plan on an impaired claim of $124,066 |
| Class 10:  Secured Claim of Creditor Dancing Deer | Impaired - Entitled to vote; to be paid in accordance with the Plan on an a impaired secured claim reduced from $4,850,000 to $350,000 as payment in full as payment in full of their $4,850,000 secured claim |
| Class 11:  Secured Claim of Creditor HMI Fox | Impaired - Entitled to vote; to be paid in accordance with Plan on an impaired secured claim of $50,000 with the approximate $4,450,000 balance of its claim treated as a Class 15 unsecured claim. |
| Class 12:  Secured Claim of Creditor Reiser | Impaired – Entitled to vote; to be paid in accordance with Plan on an impaired secured claim of $91,887.96. |
| Class 13:  Secured Priority Tax Claim of the Internal Revenue Service | Not impaired – Not entitled to vote; to be paid in accordance with Plan on a not impaired secured claim of $46,787, fully amortized for five years from the petition date (4 yr amortization) with monthly payments calculated at eight percent (8%) |

## II.  Unsecured Claims

| | |
|---|---|
| Class 14:   Priority Tax Claims of the Internal Revenue Service | Unimpaired - not entitled to vote; to be paid in full, fully amortized for five years from the petition date (4 yr amortization) with monthly payments calculated at the 1 Year Constant Maturity Index: amount of Claims total $115,358 |
| Class 14 (a):   Priority Tax Claims of the New York State Department of Taxation & Finance | Unimpaired - not entitled to vote; to be paid in full, fully amortized for five years from the petition date (4 yr amortization) with monthly payments calculated at the twelve (12) percent: amount of Claims total $93,289 |
| Class 15:   General Unsecured Claims | Impaired - Entitled to vote; Approximate 6.41% distribution |

## III.  Interests

| | |
|---|---|
| Class 16: Equity Interests | Class 16 interests are not entitled to vote on the Plan |

14

**C.**     **Treatment of Unclassified Claims**

**1.**     **Administrative Expense Claims.**

a.     **General**.     Subject to the bar date provisions herein, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date or as soon as practicable thereafter, (b) the Allowance Date, (c) such date as is mutually agreed upon by the Debtor and the holder of such Claim, and (d) the Distribution Date.

b.     **Payment of Statutory Fees**.   All fees payable pursuant to 28 U.S.C. §1930 shall be paid in Cash equal to the amount of such Administrative Expense Claim when due.

c.     **Bar Date for Administrative Expense Claims**.

(1)   <u>General Provisions</u>.   Except as provided below in Sections 3.1(c)(iii) of the Plan, requests for payment of Administrative Expense Claims must be filed no later than **twenty (20) days after the Effective Date**.   Holders of Administrative Expense Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor or any of their respective property.

(2)   <u>Professionals</u>.   All professionals or other entities requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Debtor and Post-Confirmation Service List an application for final allowance of compensation and reimbursement of expenses no later than twenty (20) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Debtor and the professionals to whose application the objections are addressed no later than thirty (30) days after the Effective Date. Any professional fees and reimbursements or expenses incurred by the Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court.

(3)   <u>Tax Claims</u>.   All requests for payment of Administrative Expense Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date ("Post-Petition Tax Claims") and for which no bar date has otherwise been previously established, must be Filed on or before the later of (i) 20 days following the Effective Date; and (ii) 30 days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that

15

is required to File a request for payment of such taxes and does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date. To the extent that the holder of a Post-Petition Tax Claim holds a lien to secure its Claim under applicable state law, the holder of such Claim shall retain its lien until its Allowed Claim has been paid in full.

**C.    Treatment of Classified Claims and Interests**

### 1.    NEW YORK BUSINESS DEVELOPMENT CORPORATION (NYBDC)

Class 1 consists of the allowed secured claim NYBDC in Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 1 Claimants Claim shall be paid in equal monthly installments of $17,500 throughout the term of the plan on the allowed secured claim of the Class 1 Claimant

The Class 1 Claimants Claim shall accrue interest at 6.03% with $1,407.75 of each $17,500 monthly installment allocated as a principal reduction payment.

The Class 1 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Class 1 Balloon Payment at the end of the 60th Month: $1,789,873

The Class 1 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 1 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 1 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 1 Claimants instruments encumbering its collateral as an Allonge.

Class 1 is Impaired and entitled to vote under the Plan

### 2.    PHYSICIANS CAPITOL CORPORATION

a.    Class 2 claimants are insiders and holders of allowed claims in Class 2 are not entitled to vote and shall receive no payments over the 5 year term of the Plan.

### 3.    BERKSHIRE BANK

Class 3 consists of the allowed secured claim of Berkshire Bank in the approximate amount of $2,243,030. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 3 Claim shall be paid in equal monthly installments of $14,829 in months one through thirty (1-30), representing monthly installments of interest only payments calculated at a fixed interest rate eight percent (8%) on the allowed secured claim of the Class 3 Claimant.

Commencing on the thirty first (31st) month of the Plan through the sixtieth (60th) month of the plan, the Class 3 Claimants' claim shall be amortized over 10 years at an interest rate of eight percent (8%) paid in equal monthly installments of approximately $26,987

The Class 3 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month: $2,162,696

The Class 3 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 3 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 3 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 3 Claimants instruments encumbering its collateral as an Allonge.

Class 3 is impaired and entitled to vote under the Plan

### 4.    TD BANK

Class 4 consists of the allowed secured claim of TD Bank in the approximate amount of $112,596. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 4 Claim shall be paid in equal monthly installments of $1,366.10 in months one through sixty (1-60),

The Class 4 Claimants' Claim shall be due and payable at the end of the sixtieth ( 60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the  60th Month: $67,823.10

The Class 4 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 4 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 4 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 4 Claimants instruments encumbering its collateral as an Allonge.

Class 4 is impaired and entitled to vote under the Plan

### 5.    SBA EIDL

Class 5 consists of the allowed secured claim of SBA EIDL in the approximate amount of $166,875. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 5 Claim shall be paid in equal monthly installments of approximately $1,117 in months one through thirty (1-30), representing monthly installments of interest only payments calculated at  a fixed interest rate of  eight percent (8%), on the allowed secured claim of the Class 5 Claimant.

4928-1148-0391, v. 3

Commencing on the thirty first (31st) month of the Plan through the sixtieth (60th) month of the plan, the Class 5 Claimants' claim shall be amortized over 10 years calculated at a fixed interest rate of eight percent (8%) and paid in equal monthly installments of approximately $1,395.81.

The Class 5 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:   $162,505

The Class 5 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 5 Claimant shall retain its pre-petition collateral under the Plan.

Interest rate adjustments shall be pursuant to the SBA EIDL Loan Documentation.

Upon entry of the Confirmation Order the Class 5 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 5 Claimants instruments encumbering its collateral as an Allonge.

Class 5 is impaired and entitled to vote under the Plan

### 6.     MCA CAPITAL ASSIST

Class 6 consists of the allowed secured claim of MCA Capital Assist in the approximate amount of $31,671. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 6 Claim shall be paid in equal monthly installments of $132  representing monthly installments of interest only payments calculated at a fixed interest rate of  five percent (5%)  throughout the term of the plan on the allowed secured claim of the Class 6 Claimant.

The Class 6 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:    $31,671

The Class 6 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 6 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 6 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 6 Claimants instruments encumbering its collateral as an Allonge.

Class 6 is impaired and entitled to vote under the Plan

### 7.     MCA CAPITAL PARKLINE

Class 7 consists of the allowed secured claim of MCA Parkside in the approximate amount of $42,457. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 7 Claim shall be paid in equal monthly installments of $177  representing

monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 7 Claimant

The Class 7 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:    $42,457

The Class 7 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 7 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 7 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 7 Claimants instruments encumbering its collateral as an Allonge.

Class 7 is impaired and entitled to vote under the Plan

### 8.    MCA CFG

Class 8 consists of the allowed secured claim of MCA CFG in the approximate amount of $88,518. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 8 Claim shall be paid in equal monthly installments of $369 representing monthly installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 8 Claimant

The Class 8 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

Projected Balloon Payment at the end of the 60th Month:    $88,518

The Class 8 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 8 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 8 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 8 Claimants instruments encumbering its collateral as an Allonge.

Class 8 is impaired and entitled to vote under the Plan

### 9.    PAWNEE

Class 9 consists of the allowed secured claim of Pawnee in the approximate amount of $124,066. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 9 Claim shall be paid in equal monthly installments of $2,067.77 throughout the term of the plan on the allowed secured claim of the Class 9 Claimant.

4928-1148-0391, v. 3

The Class 9 Claimants' Claim shall be paid treated as paid in full at the end of the sixtieth (60th) month following the Effective Date of the Plan through payment of the sixty (60) monthly installments.

The Class 9 Claimants Claim is treated as fully secured under the plan and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 9 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 9 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 9 Claimants instruments encumbering its collateral as an Allonge.

Class 9 is impaired and entitled to vote under the Plan

## 10.    DANCING DEER

Class 10 consists of the allowed secured claim of Dancing Dear in the approximate amount of $4,850,000  Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 10 Claim shall reduce its claim to $350,000.  As payment in full of its $4,850,000 secured claim the Class 10 Claimant shall be paid as follows:  A payment equal to $13,000 on the Effective date of the plan .  Monthly payments in months 2 to 12 of $3,000 per month, A payment of $18,000 on the 13th month of the Plan., Monthly payments in months   14 through  24 of $3,000 per month, A payment of  28,000 on the 25th month of the Plan.. Monthly payments in months 26 to 35 of $3,000 per month with a balloon payment at the end of the 36th month equal to $192,000 as payment in full of the Class 10 Claimants claim.

The Class 10 Claimants Claim is treated as fully secured under the plan for certain assets and may be paid in full at any time under the Plan with no prepayment penalty.

The Class 10 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 10 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 10 Claimants instruments encumbering its collateral as an Allonge.

Class 10 is impaired and entitled to vote under the Plan

### Event of Default

Non-payment of principal or interest, or any fees or other sums due herein shall constitute an Event of Default following Dancing Deer Baking Co's ("DDBC" or "Lender") delivery to Debtor of a notice of such default by letter and email to both Debtor and Debtor's counsel (a "Notice of Default") and which default is not remedied within fifteen (15) calendar days of delivery thereof to Debtor. Debtor may remedy said Default by paying at least fifty (50%) percent of the monthly past due payment within said fifteen (15) days, and if Debtor makes such payment, Debtor shall be permitted another fifteen (15) days to remedy said default including any subsequent payment that becomes due during said cure period. In sum, Debtor may cure a Notice of Default if it pays at least fifty (50%) percent of the past due amounts within the first fifteen (15) days of delivery thereof to the Debtor and cures the entire amount past due including any subsequent payments that become due during said cure period within thirty (30) days of

20

delivery thereof to Debtor.  In addition, the occurrence of a non-monetary Event of Default under this Plan of Reorganization or the existing Loan Documents (other than an Event of Default already existing at the time of confirmation of the Plan of Reorganization) shall, following delivery of a Notice of Default and a thirty (30) day opportunity to cure, constitute an Event of Default under this Plan of Reorganization.

Upon the happening of one or more Events of Default, Lender shall be entitled to exercise all of the rights, recourses and remedies available under its Loan Documents, this Plan of Reorganization, at law and in equity, including without limitation by declaring the principal of the amounts then outstanding to be immediately due and payable, together with all interest thereon and fees and expenses accruing under this Plan of Reorganization.

**Failure of Debtor to Remedy an Event of Default:**

Should Debtor fail to remedy an Event of Default within the applicable time period as set forth above, Debtor shall promptly voluntarily surrender all collateral security assets to the Lender and/or its agents, employees, attorneys and representatives and cooperate with the Lender and/or its agents, employees, attorneys and representatives in an orderly liquidation of the collateral security, and furthermore, Debtor shall be prohibited from filing a serial petition for relief under the Bankruptcy Code.

Debtor agrees that the filing of any personal bankruptcy by the Debtor's principal, Dan Ratner, shall not operate as a stay against Lender's ability to exercise its rights as against the Debtor and to proceed with an orderly liquidation of the Debtor's collateral security.

**The Internal Revenue Service's claims for Dancing Deer will be paid as follows:**

The Internal Revenue Service's Dancing Deer Secured claim equals $0

The Internal Revenue Service's Dancing Deer Unsecured  Priority Claim of $56,530.36 shall be calculated at a fixed annual interest rate equal to the one year Constant Maturity Treasury Index (CMT) as published on the Effective Date of the Plan. At an estimated CMT of 4.34%, the payment on the Internal Revenue Service's Unsecured  Priority claim shall be $581.52 per month.

The Internal Revenue Service's Dancing Deer Unsecured  Non Priority claim of $28,799.33 shall receive a pro-rata distribution from the approximate $15,600,000 of claims in the unsecured creditors pool, such that this claim shall receive 0.1846% (derived by dividing $28,799.33 by $15,600,000) of the annual $100,0000 distribution to the unsecured creditors pool.  Said annual payment to the Internal Revenue Service's  Unsecured  Non Priority claim shall equal $184.61.

### 11.    HMI FOX

Class 11 consists of the allowed secured claim of HMI Fox in the approximate amount of $50,000. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 11 Claim shall be paid in equal monthly installments of $208 representing monthly

installments of interest only payments calculated at a fixed interest rate of five percent (5%) throughout the term of the plan on the allowed secured claim of the Class 11 Claimant

The Class 11 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor and may be paid in full at any time under the Plan with no prepayment penalty.

Projected Balloon Payment at the end of the 60th Month:    $50,000

The approximate $6,523,000 balance of the Class 11 Claimants Claim is treated as Class 15 unsecured Claimant under the plan.

The Class 11 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 11 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 11Claimants instruments encumbering its collateral as an Allonge.

Class 11 is impaired and entitled to vote under the Plan

## 12.    REISER

Class 12 consists of the allowed secured claim of Reiser in the approximate amount of $91,887.96. Subject to the Plan, with respect to Disputed Claims, On the Effective Date the holder of the Class 12 Claim shall be paid in equal monthly installments of $2,041.95 all of which shall be allocated as principal reduction payments until the Class 12 Claimants' Claim is paid in full by the 45th month.

The Class 12 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 12 Claimant shall retain its pre-petition collateral under the Plan.

Upon entry of the Confirmation Order the Class 12 Claimant shall attach copies of the confirmed Plan and the Confirmation Order to the Class 12 Claimants instruments encumbering its collateral as an Allonge.

Class 12 is impaired and entitled to vote under the Plan

Creditor Disclosure Note: Reiser does not consent to this proposed treatment, and as a result, Reiser may object to confirmation of the Plan on various bases, including, without limitation, that the Plan impermissibly alters its contractual rights.  If Reiser does not consent to the proposed treatment under the Plan, the Debtor will be required to seek to "cram down" the Plan by confirming it under section 1129(b) of the Bankruptcy Code.

### Class 13 - Secured Tax Priority Claims

## 13.    SECURED PRIORITY TAX CLAIM OF THE INTERNAL REVENUE SERVICE

Class 13 consists of the allowed Secured Priority Tax Claim of the Internal Revenue Service in the approximate amount of $46,787. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 13 Claimants' claim shall be amortized

4928-1148-0391, v. 3

over 4 years    (5 years from the petition date) at the IRS Proof of Claim interest rate of eight percent (8%) paid in equal monthly installments of approximately $1,142.21.

The Class 13 Claimants' Claim shall be due and payable at the end of the sixtieth (60th) month following the Effective Date of the Plan through the sale or refinance of the Debtor.

The Class 13 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

The Class 13 Claimant shall retain its pre-petition collateral under the Plan.

Class 13 is not impaired and not entitled to vote under the Plan

**The Internal Revenue Service's claims for Cell-Nique will be paid as follows:**

The Internal Revenue Service's Cell-Nique Secured claim of $46,786.91 shall be fully amortized at a fixed annual interest rate equal to 8% and amortized over a 48 month period. The monthly payment shall be $1,142.21.

The Internal Revenue Service's Cell-Nique Unsecured  Priority Claim of $631.93 shall be calculated at a fixed annual interest rate equal to the one year Constant Maturity Treasury Index (CMT) as published on the Effective Date of the Plan. At an estimated CMT of 4.34%, the payment on the Internal Revenue Service's Unsecured  Priority Claim shall be  $14.36 per month.

The Internal Revenue Service's Cell-Nique Unsecured  Non Priority claim of $2,800.95 shall receive a pro-rata distribution from the approximate $15,600,000 of claims in the unsecured creditors pool, such that this claim shall receive 0.01795% (derived by dividing $2,800.95 by $15,600,000) of the annual $100,0000 distribution to the unsecured creditors pool.  Said annual payment to the Internal Revenue Service's  Unsecured  Non Priority claim shall equal $0.18

**The  Internal  Revenue  Service's  claims  for  Hudson  River  Foods  will  be  paid  as follows:**

The Internal Revenue Service's Hudson River Foods Secured claim equals $0

The  Internal  Revenue  Service's  Hudson  River  Foods  Unsecured  Priority  claim  of $33,982.69 shall be calculated at a fixed annual interest rate equal to the one year Constant Maturity Treasury Index (CMT) as published on the Effective Date of the Plan. At an estimated CMT of 4.34%, the payment shall be  $772.48 per month.

The Internal Revenue Service's Hudson River Foods Unsecured  Non Priority claim of $12,367 shall receive a pro-rata distribution from the approximate $15,600,000 of claims in the unsecured creditors pool, such that this claim shall receive 0.07928% (derived by dividing $12,367 by $15,600,000) of the annual $100,0000 distribution to the unsecured creditors pool. Said annual payment to the Internal Revenue Service's  Unsecured.

4928-1148-0391, v. 3

### 14.      Class 14 - Allowed Unsecured Tax Priority Claims

As set forth more fully in the Plan, unless otherwise agreed by the holder of a Priority Tax Claim and the Reorganized Debtor, each Tax Creditor will receive, in full satisfaction of its Allowed Priority Tax Claim, deferred cash payments totaling the Allowed amount of such Claim over a period not exceeding five (5) years from the Petition Date, as required by the Bankruptcy Code, which period shall conclude on or about April 15, 2029.  The Plan provides that payments on the Allowed Priority Tax Claim.

Class 14 consists of the allowed Unsecured Priority Tax Claim of the Internal Revenue Service in the approximate amount of $115,358. Subject to the Plan, with respect to Disputed Claims, on the Effective Date the holder of the Class 14 Claimants' claim shall be amortized over 4 years (5 years from the petition date) with monthly payments calculated at an interest rate equal to the 1 Year Constant Maturity Index of approximately four-point three four percent (4.34%) paid in equal monthly installments of approximately $2,559.48

The Class 14 Claimants' Claim shall be deemed paid in full on the forty eighth (48th) month following the Effective Date of the Plan by way of the equal monthly installment payments.

The Class 14 Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

### 14(a).        UNSECURED PRIORITY TAX CLAIMS OF NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE

14(a) consists of the allowed Unsecured Priority Tax Claim of the New York State Department of Taxation & Finance in the approximate amount of $93,289. Subject to the  Plan, with respect to Disputed Claims, on the Effective Date the holder of the 14(a) Claimants' claim shall be amortized over 4 years (5 years from the petition date) with monthly payments calculated at an interest rate equal to the Proof of Claim interest rate  of twelve percent (12%) paid in equal monthly installments of approximately $2,457.

The 14(a)  Claimants' Claim shall be deemed paid in full on the forty eighth (48th) month following the Effective Date of the Plan by way of the equal monthly installment payments.

The 14(a)   Claimants' Claim may be paid in full at any time under the Plan with no prepayment penalty.

### Class 15 – General Unsecured Claims

Class 15 consists of the allowed General Unsecured Creditors in the approximate amount of $11,050,000 Subject to the Plan, with respect to Disputed Claims, on the Effective Date Class 15 Claimants' shall be paid $ 75,000 on each December and $75,000 on each July over the five-year term of the Plan, commencing in December, 2025 for a total of $750,000 over the term of the Plan, equaling approximately 6.79% of their claims.  Said payments shall be distributed Pari passu between the Class 15 Claimants.

Class 15 is impaired and entitled to vote under the Plan

4928-1148-0391, v. 3

16.      **Class 16 – Equity Interests**

Class 16 consists of the Equity Interest Holders of the Debtor.

Physician's Capitol Corporation contributed $200,000 as a new value contribution to the Debtor in January, 2025 and $130,000 in March, 2025 together equal a New Value Contribution by the Debtor prior to the Effective date and shall own 100% of the reorganized Debtor. Class 16 interests are not entitled to vote on the Plan.

## D.      Establishment of Reserves

The Plan provides for the creation of a Distribution Reserve to protect holders of Disputed Claims in the event that there are sufficient funds to make a distribution to creditors with claims of the same priority.  To the extent such funds become available, a reserve will be created for Disputed Unsecured Claims so that all unsecured creditors will share ratably in any distribution. The Distribution Reserve will include, in one or more accounts of the Debtor, Cash equal to the aggregate of (a) Cash that would have been distributed on the Distribution Date on account of Disputed or undetermined (i) Administrative Expense Claims had they been Allowed Claims, provided that with respect to Administrative Expense Claims for which applications for compensation of professionals or others retained or to be compensated pursuant to Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code are or will be pending but are then undetermined, the amount of Cash deposited shall be the amount sought by such persons or the maximum amount such persons indicate that they intend to apply for, (ii) Priority Claims, (iii) General Unsecured Claims plus (b) Earned Interest on all Cash in the Distribution Reserve, plus (c) Cash in the amount of the sum of the estimated out-of-pocket fees and expenses of, or to be incurred by, the Debtor, plus (d) Cash in the amount of all taxes previously incurred by the Debtor (and not paid or otherwise provided for under the Plan) and all taxes and professional fees estimated to be incurred by the Debtor, including professional fees of the Debtor; plus (e) Cash in the amount of all estimated costs and expenses of effectuating the corporate actions contemplated by Article 7 of the Plan, plus (f) Cash in the amount of the estimated operating expenses of the Debtor.

## E.      Treatment of Executory Contracts

All Executory Contracts of the Debtor that have not previously been assumed or rejected will be deemed rejected as of the Petition Date.  The Debtor will ask the Court to set a bar date of twenty (20) days after the Effective Date for the filing of claims for damages arising out of rejection of any remaining contracts.

## F.      Releases by Debtor

**Released Parties**: means collectively and in each case in their capacity as such: (a) the Debtor; (b) the Estate; (c) with respect to each of the foregoing entities in clauses (a) through (c), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, non shareholder employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

As of the Effective Date, except for the right to enforce the Plan and any related documents, for good and valuable consideration, including the service of the Released Parties

25

to facilitate the reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by Debtor, the Reorganized Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or its affiliates (if any) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, or related agreements, instruments or other documents, the solicitation of votes with respect to the Plan, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.

## G.  Releases by Holders of Claims and Interests

As of the Effective Date, except for the right to enforce the Plan and any related documents, each holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, or related agreements, instruments or other documents, the solicitation of votes with respect to the Plan, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.

## H.  Exculpation and Limitation of Liability.

The Released Parties (each, an "Exculpated Party") shall neither have nor incur any liability to any Person or Entity for any action taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case including, without limitation, the preparation and filing of the Chapter 11 Case, or the formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; provided, however, that the exculpation provided for in Article VII of the Plan shall not affect or modify any obligations created under this Plan, any obligations under the Settlement Agreement, or the rights of any Holder of an Allowed Claim to enforce its rights under this Plan and shall not release any action or inaction constituting willful misconduct or

gross negligence, in each case subject to the determination of such by final order of a court of competent jurisdiction; provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities, if any, under this Plan and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the benefits and protections of section 1125(e) of the Bankruptcy Code.

## ARTICLE 8
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

The Plan contemplates payment to creditors through the ongoing operation of the Debtors business Dan Ratner shall be the distribution agent responsible for all distributions under the Plan and waives compensation as disbursing agent.

Except as otherwise expressly limited in the Plan, the Distribution Agent shall have control and authority over the Estate Assets, and over the management and disposition of the Estate Assets. The Debtor will supervise the filing and resolution of claim objections.

Attached hereto as Exhibit "A" and incorporated herein by reference are the Debtors Financial Projections.  The Debtor believes the projections are reasonable and feasible and provide creditors with the means to be paid their claims under the Plan.

## ARTICLE 9
## RECOVERY ANALYSIS, FEASIBILITY AND RISKS

### A.    Recovery Analysis and Feasibility

Recoveries to holders of Unsecured Claims are subject to many variables at this point. First, recoveries to holders of Unsecured Claims are dependent on the Debtor having sufficient funds to pay all Allowed Administrative and Priority Claims after paying the costs that the Debtor incurs in administering the post-confirmation assets. The Debtor may incur expense in objecting to Administrative and Priority Claims that are disputed. Important variables affecting the recovery to holders of Unsecured Claims are (i) the total amount of expenses of the Debtor, (ii) the total amount of Allowed Claims entitled to payment before payments to holders of Unsecured Claims, and (iii) the total amount of Allowed Unsecured Claims.

### B.    Risks Associated with the Plan.

Both the confirmation and consummation of the Plan are subject to a number of risks. Specifically, if certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Claimholders accept the Plan. Although the Debtor believes that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtor to re-solicit acceptances, which could delay and/or jeopardize confirmation of the Plan. The Debtor believes that the solicitation of votes on the Plan will comply with Section 1126(b) and that the Bankruptcy Court will confirm the Plan. The Debtor, however, can provide no assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a resolicitation of acceptances.

## ARTICLE 10
## ALTERNATIVES TO PLAN

There are two possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 case, or (b) the Debtor's Chapter 11 case could be discharged subject to the Plan Order approved and filed.

**A.    Dismissal**

If the Debtor's Chapter 11 case was dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal would force a race among creditors to take over and dispose of any remaining assets. Because smaller creditors would not have an equal incentive to expend significant funds in pursuing the Debtor's remaining assets, they would undoubtedly receive less or nothing on their Claims.  The Debtor believes that the dismissal of the Chapter 11 case will result in far smaller distributions or distributions being realized by the Unsecured Creditors of this estate than the distributions provided for in the Plan.

**B.    Discharge Subject to The Plan Order Approved**

If the Plan is not confirmed, it is likely that the Debtor's Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any funds.

If the Debtor's Chapter 11 case is converted to Chapter 7, the present Administrative Claims may have a priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants and other professionals engaged by the trustee.  The Debtor believes that conversion to Chapter 7 is likely to result in higher costs of administration than confirmation of the Plan. First, the Chapter 7 Trustee will receive a percentage of the money distributed to holders of Allowed Claims as compensation. The Chapter 7 Trustee will have to retain attorneys.  The Chapter 7 Trustee will also likely have to retain accountants in connection with making claim reconciliations, filing necessary tax returns and otherwise closing the Estate.

## ARTICLE 11
## CERTAIN UNITED STATES FEDERAL INCOME TAX
## CONSEQUENCES OF THE PLAN

**A.    Introduction**

The following discussion summarizes certain material U.S. federal income tax consequences of the implementation of the Plan to the Debtor and Claimholders. This discussion is based on the Internal Revenue Code of 1986, as amended, Treasury regulations, judicial decisions, and published rulings and pronouncements of the IRS in effect on the date of this Disclosure Statement. Changes in those rules, or new interpretations of those rules, may have retroactive effect and could significantly affect the federal income tax consequences described below.

28

The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  There can be no assurance that the IRS will agree with this discussion of material federal income tax consequences.  In addition, this summary does not address state, local or foreign tax consequences of the Plan, and it does not purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, insurance companies, financial institutions, small business investment corporations, regulated investment companies, tax-exempt organizations, or investors in pass through entities).

**THE FOLLOWING SUMMARY OF CERTAIN MATERIAL U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A PARTICULAR CLAIMHOLDER.  ALL CLAIMHOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS IN DETERMINING THE U.S. FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES TO THEM UNDER THE PLAN.**

**B.**     **Material Tax Consequences to the Debtor**

Generally, under the terms of the Plan, all Claims will be released except to the extent that the Debtor has cash available to satisfy all or a portion of such Claims. Any income resulting from the satisfaction of any Claim at a discount will not constitute taxable income to the Debtor because the debt forgiveness arises in connection with a bankruptcy case under Title 11 of the United States Code.

**C.**     **Material Tax Consequences to Creditors**

In General.     The federal income tax consequences of the implementation of the Plan to a Creditor will depend, among other things, on (a) whether the Creditor receives consideration in more than one tax year, (b) whether the Creditor is a resident of the United States, (c) whether all of the consideration by the Creditor is deemed to be received by that Creditor as part of an integrated transaction, (d) whether the Creditor reports income using the accrual or cash method of accounting, and (e) whether the Creditor has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

Gain or Loss on Exchange.  Generally, a Creditor will realize a gain or loss on the exchange under the Plan of its Claim for cash in an amount equal to the difference between (i) the cash received by the Creditor (other than any cash attributable to accrued but unpaid interest on the Claim), and (ii) the Creditor's adjusted basis in the Claim exchanged therefor (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain or loss recognized will be a capital gain or loss if the Claim was a capital asset in the hand of the Creditor, and such gain or loss will be a long-term capital gain or loss if the Creditor's holding period for the Claim surrendered exceeds one (1) year at the time of the exchange.

Payments Attributable to Interest.     A Creditor not previously required to include in its taxable income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest, to the extent the cash it receives pursuant to the Plan is allocable to such accrued but unpaid interest. A Creditor previously required to include in its taxable income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss, to the extent the

amount of interest actually received by the Creditor is less than the amount of interest taken into income by the Creditor.

Section 1145 Exemption.   The issuance of and the distribution under the Plan of equity interests, if any, shall be exempt from registration under the Securities Act of 1933 or applicable securities laws without further act or action by any Person pursuant to section 1145(a) of the Bankruptcy Code.

## D.    Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, Creditors may be subject to backup withholding at the rate of twenty-eight percent (28%) with respect to payments made pursuant to the Plan unless such Creditor (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income.  Any amount withheld under these rules will be credited against the Creditor's federal income tax liability. Creditors may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**ARTICLE 12**
**CONCLUSION**

This Disclosure Statement has attempted to provide information regarding the Debtor's bankruptcy estate and the potential benefits that might accrue to holders of Claims against and Interests in the Debtor under the Plan as proposed. The Plan provides for the orderly liquidation of the Debtor's remaining assets and the distribution of the proceeds in accordance with the priority scheme established by the Bankruptcy Code. The Debtor urges interested parties to vote in favor of the Plan.

DATED: June 30th, 2025
        Albany, New York

DEBTOR AND DEBTOR- IN-POSSESSION
Cell-Nique Corporation (Main Case)

By: _____
      Dan Ratner, Its President


O'Connell & Aronowitz, P.C.

By: _____
      Peter A. Pastore, Esq.
ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION
54 State Street, 9th Floor
Albany, New York 12207
Tel. No. 518-462-5601

30

| 5/28/2025 | EXHIBIT A CONSOLIDATED CELL-NIQUE FINANCIAL PROJECTIONS | | | | | |
|---|---|---|---|---|---|---|
| **TAX DEBT** | | | | | | |
| Cellnique NY Tax Priority | 16,139 | | | | | |
| Cellnique NY Tax Non Priority | 3,247 | | | | | |
| Cellnique IRS Priority | 632 | | | | | |
| Cellnique IRS Secured | 46,787 | | | | | |
| | | | | | | |
| Dancing IRS Priority | 56,530 | | | | | |
| Dancing IRS non-Priority | 28,799 | | | | | |
| Dancing NY Tax Priority | 52,123 | | | | | |
| Dancing NY Tax Non-Priority | 6,517 | | | | | |
| Hudson NY Dept. of Tax & Finance | 25,027 | | | | | |
| Hudson NY Dept Tax & Fi NonPriority | 6,208 | | | | | |
| Hudson IRS Priority | 33,983 | | Expense Assumptions | 2.00% | annual increase in expenses | |
| Hudson IRS Non-Priority | 12,367 | | Payroll Assumptions | 2.00% | annual increase in payroll expense | |
| | | | Revenue Assumptions | 3.00% | annual increase in revenue | |
| **FINANCIAL ASSUMPTIONS** | Balance | Interest Rate | | | | |
| Berkshire Bank | 2,243,030 | 8.00% | * 2 loans | Berkshire Bank | 8.00% | Int only Mo 1-30…... 10 Yr Am Mo 31-60 |
| TD Bank | 112,596 | N/A | | TD Bank | N/A | $1,366.10 Per Mo Months 1-60 w/Balloon Pmt at end of 60th Month |
| Combined IRS Priority Unsecured | 91,145 | 4.34% | 1 yr CMT | Comb IRS Priority Ur | 4.34% | Full Am over 4 yrs @ Int at 1 year Constant Maturity Index |
| IRS Secured | 46,787 | 8.00% | | IRS Secured | 8.00% | Fully amortized over 4 years at 8% interest |
| Combined IRS Non Priority Unsecured | 41,166 | Unsecured Creditor Pool | | IRS Non Priority Uns | N/A | Fully amortized over 4 years at 1 yr CMT index |
| Combined NY Dept Tax Priority Unsecured | 93,289 | 12.00% | | NY Pri-Unsecured | 12.00% | Fully Amortized over 4 yrs @ Interest at 12% |
| Combined NY Tax Non Priority Unsecured | 15,972 | Unsecured Creditor Pool | | NY Non- Pri-Unsecur | N/A | Paid in Unsecured Creditor Pool |
| SBA EIDL | 166,875 | 8.00% | *** | SBA EIDL | 8.00% | 8%  Int only Mo 1-30…... 10 Yr Am Mo 31-60 |
| MCA Capital Assist | 31,671 | 5.00% | Fixed | MCA Capital Ass | 5.00% | Interest Only With Balloon Pmt at the end of the 60th Month |
| MCA Parkside | 42,458 | 5.00% | Fixed | MCA Parkside | 5.00% | Interest Only With Balloon Pmt at the end of the 60th Month |
| MCA CFG | 88,518 | 5.00% | Fixed | MCA CFG | 5.00% | Interest Only With Balloon Pmt at the end of the 60th Month |
| Pawnee | 124,066 | 2,067.77 | Per Mo | Pawnee | 2,067.77 | Per month for 60 Months as Payment in Full |
| Dancing Dear | 350,000 | N/A | | Dancing Dear | N/A | Pmt Schedule Per Negotiated Agreement |
| | | | | | | |
| HMI/FOX | 50,000 | 5.00% | Fixed | HMI/FOX | 5.00% | Int Only On Secured $50K Portion With Balloon Pmt at the |
| | | | | | | end of the 60th Month (Balance unsecured and disputed) |
| NYBDC | 2,182,000 | 6.03% | Fixed | NYBDC | | Int Rate of 6.03% Per Poc w/Balloon Pmt End of 60th Mo |
| Reiser | 91,888 | 2,042 | Per Mont | Reiser | 2,042 | Monthly Through Loan Maturity, Per Stipulation |
| Unsecured | 11,050,000 | $150,000 Annually | | Unsecured | | $150,000 Annually   6.41% payout over 5 years |

**YEAR 1 FINANCIAL PROJECTIONS CONSOLIDATED CELL-NIQUE**

| | | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Hudson River Foods | | 20,000 | 20,000 | 20,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 510,000 |
| Ians CoMan | | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 900,000 |
| CoManufacture | | 350,000 | 400,000 | 400,000 | 400,000 | 300,000 | 350,000 | 350,000 | 350,000 | 350,000 | 350,000 | 350,000 | 350,000 | 4,300,000 |
| Dancing Deer | | 20,000 | 50,000 | 50,000 | 75,000 | 750,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 1,295,000 |
| Hodgson Mills | | 8,000 | 9,000 | 10,000 | 11,000 | 12,000 | 15,000 | 17,000 | 19,000 | 21,000 | 23,000 | 25,000 | 27,000 | 197,000 |
| **Gross Sales** | | 473,000 | 554,000 | 555,000 | 611,000 | 1,187,000 | 540,000 | 542,000 | 544,000 | 546,000 | 560,000 | 562,000 | 564,000 | 7,238,000 |
| Less discounts and allowances | | -1,230 | -2,040 | -2,050 | -2,610 | -11,370 | -26,000 | -26,200 | -26,400 | -26,600 | -26,800 | -27,000 | -20,200 | -198,500 |
| **Total Consolidated Cell-Nique Revenues** | | 471,770 | 551,960 | 552,950 | 608,390 | 1,175,630 | 514,000 | 515,800 | 517,600 | 519,400 | 533,200 | 535,000 | 543,800 | 7,039,500 |
| | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Direct Cost of Product | | 63,483 | 76,314 | 76,472 | 106,678 | 260,126 | 63,840 | 64,128 | 64,416 | 64,704 | 64,992 | 89,280 | 89,088 | 1,083,521 |
| Direct Labor & Burden | | 150,000 | 150,000 | 150,000 | 165,000 | 175,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 1,910,000 |
| Rent is Settlement Pmt to NYBDC | | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 210,000 |
| Indirect Labor & Burden | | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 910,000 |
| Equipment Expense | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| Janitorial & Utilities | | 19,000 | 17,000 | 17,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 17,000 | 17,000 | 19,000 | 214,000 |
| Travel/Auto/Truck/Freight | | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 61,500 |
| Repairs & Maint | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| Sales & Marketing | | 12,000 | 35,000 | 35,000 | 35,000 | 35,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 250,000 |
| General & Administrative | | 110,000 | 110,000 | 175,000 | 175,000 | 175,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 1,620,000 |
| Research & Development | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| | | | | | | | | | | | | | | |
| **Total Operating Expenses** | | 457,483 | 491,314 | 556,472 | 602,678 | 766,126 | 492,340 | 492,628 | 492,916 | 493,204 | 492,492 | 516,780 | 518,588 | 6,373,021 |
| **Consolidated Cell-Nique NOI** | | 14,287 | 60,646 | -3,522 | 5,712 | 409,504 | 21,660 | 23,172 | 24,684 | 26,196 | 40,708 | 18,220 | 25,212 | 666,479 |
| | | | | | | | | | | | | | | |
| **Monthly Payments** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Berkshire Bank | | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 179,442 |
| TD Bank | | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 16,393 |
| Combined IRS Priority Unsecured | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 22,790 |
| IRS Secured | | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 12,564 |
| Combined NY Dept Tax Priority Unsecured | | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 27,023 |
| SBA EIDL | | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 13,350 |
| MCA Capital Assist | | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 1,584 |
| MCA Parkside | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,123 |
| MCA CFG | | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 4,426 |
| UST | | 650 | | | 650 | 0 | 0 | 650 | | 0 | 650 | 0 | 650 | 3,250 |
| Pawnee | | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 24,813 |
| Dancing Dear | | 13,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 46,000 |
| HMI/FOX | | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 2,500 |
| Reiser | | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 24,503 |
| Unsecured | | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 0 | 0 | 0 | 0 | 75,000 | 150,000 |
| | | | | | | | | | | | | | | |
| **Total Monthly Plan Payments** | | 41,749 | 31,099 | 31,099 | 31,749 | 106,099 | 31,099 | 31,749 | 31,099 | 31,099 | 31,749 | 31,099 | 106,749 | 536,433 |
| Combined Operating Expenses and | | | | | | | | | | | | | | |
| Monthly Plan Payments | | 499,232 | 522,412 | 587,571 | 634,427 | 872,225 | 523,439 | 524,377 | 524,015 | 524,303 | 524,241 | 547,879 | 625,337 | 6,909,454 |
| Net Income After Opex/Lease and Plan Payments | | -27,462 | 29,548 | -34,621 | -26,037 | 303,405 | -9,439 | -8,577 | -6,415 | -4,903 | 8,959 | -12,879 | -81,537 | 130,046 |
| New Value Contribution | | 50,000 | | | | | | | | | | | | |
| Balance from DIP Account | 100,000 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Cumulative Cash Balance** | | 122,538 | 152,086 | 117,465 | 91,429 | 394,834 | 385,396 | 376,819 | 370,404 | 365,502 | 374,461 | 361,583 | 280,046 | |

**YEAR 2 FINANCIAL PROJECTIONS  CONSOLIDATED CELL-NIQUE**

| | | | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| Hudson River Foods | | | 20,600 | 20,600 | 20,600 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 525,300 |
| Ians CoMan | | | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 77,250 | 927,000 |
| CoManufacture | | | 360,500 | 412,000 | 412,000 | 412,000 | 309,000 | 360,500 | 360,500 | 360,500 | 360,500 | 360,500 | 360,500 | 360,500 | 4,429,000 |
| Dancing Deer | | | 20,600 | 51,500 | 51,500 | 77,250 | 772,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 51,500 | 1,333,850 |
| Hodgson Mills | | | 8,240 | 9,270 | 10,300 | 11,330 | 12,360 | 15,450 | 17,510 | 19,570 | 21,630 | 23,690 | 25,750 | 27,810 | 202,910 |
| Gross Sales | | | 487,190 | 570,620 | 571,650 | 629,330 | 1,222,610 | 556,200 | 558,260 | 560,320 | 562380 | 576,800 | 578,860 | 580,920 | 7,455,140 |
| Less discounts and allowances | | | -1,267 | -2,101 | -2,112 | -2,688 | -11,711 | -26,780 | -26,986 | -27,192 | -27398 | -27,604 | -27,810 | -20,806 | -204,455 |
| Total Consolidated Cell-Nique Revenues | | | 485,923 | 568,519 | 569,539 | 626,642 | 1,210,899 | 529,420 | 531,274 | 533,128 | 534982 | 549,196 | 551,050 | 560,114 | 7,250,685 |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Direct Cost of Product | | | 64,753 | 77,840 | 78,001 | 108,812 | 265,329 | 65,117 | 65,411 | 65,704 | 65,998 | 66,292 | 91,066 | 90,870 | 1,105,191 |
| Direct Labor & Burden | | | 153,000 | 153,000 | 153,000 | 168,300 | 178,500 | 163,200 | 163,200 | 163,200 | 163,200 | 163,200 | 163,200 | 163,200 | 1,948,200 |
| Rent is Settlement Pmt to NYBDC | | | 17,500 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 17,850 | 213,850 |
| Indirect Labor & Burden | | | 71,400 | 71,400 | 71,400 | 71,400 | 71,400 | 81,600 | 81,600 | 81,600 | 81,600 | 81,600 | 81,600 | 81,600 | 928,200 |
| Equipment Expense | | | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 36,720 |
| Janitorial & Utilities | | | 19,380 | 17,340 | 17,340 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 17,340 | 17,340 | 19,380 | 218,280 |
| Travel/Auto/Truck/Freight | | | 6,120 | 6,120 | 6,120 | 6,120 | 6,120 | 4,590 | 4,590 | 4,590 | 4,590 | 4,590 | 4,590 | 4,590 | 62,730 |
| Repairs & Maint | | | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 36,720 |
| Sales & Marketing | | | 12,240 | 35,700 | 35,700 | 35,700 | 35,700 | 14,280 | 14,280 | 14,280 | 14,280 | 14,280 | 14,280 | 14,280 | 255,000 |
| General & Administrative | | | 112,200 | 112,200 | 178,500 | 178,500 | 178,500 | 127,500 | 127,500 | 127,500 | 127,500 | 127,500 | 127,500 | 127,500 | 1,652,400 |
| Research & Development | | | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 3,570 | 42,840 |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | | | 466,283 | 501,140 | 567,601 | 614,732 | 781,449 | 502,187 | 502,481 | 502,774 | 503,068 | 502,342 | 527,116 | 528,960 | 6,500,131 |
| Consolidated Cell-Nique NOI | | | 19,640 | 67,379 | 1,937 | 11,910 | 429,450 | 27,233 | 28,793 | 30,354 | 31,914 | 46,854 | 23,934 | 31,154 | 750,554 |
| | | | | | | | | | | | | | | | |
| **Monthly Payments** | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Berkshire Bank | | | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 179,442 |
| TD Bank | | | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 16,393 |
| Combined IRS Priority Unsecured | | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 24,862 |
| IRS Secured | | | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 13,707 |
| Combined NY Dept Tax Priority Unsecured | | | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 29,480 |
| SBA EIDL | | | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 13,350 |
| MCA Capital Assist | | | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 1,584 |
| MCA Parkside | | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,123 |
| MCA CFG | | | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 4,426 |
| UST | | | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 650 | 3,250 |
| Pawnee | | | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 24,813 |
| Dancing Dear | | | 18,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 51,000 |
| HMI/FOX | | | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 2,500 |
| Reiser | | | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 24,503 |
| Unsecured | | | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 0 | 0 | 0 | 0 | 75,000 | 150,000 |
| | | | | | | | | | | | | | | | |
| Total Monthly Plan Payments | | | 46,749 | 31,099 | 31,099 | 31,749 | 106,099 | 31,099 | 31,749 | 31,099 | 31,099 | 31,749 | 31,099 | 106,749 | 541,433 |
| Combined Operating Expenses and | | | | | | | | | | | | | | | |
| Monthly Plan Payments | | | 513,031 | 532,238 | 598,700 | 646,480 | 887,547 | 533,285 | 534,229 | 533,873 | 534,167 | 534,090 | 558,214 | 635,708 | 7,041,564 |
| Net Income After Opex/Lease  and Plan Payments | | | -27,108 | 36,280 | -29,162 | -19,838 | 323,352 | -3,865 | -2,955 | -745 | 815 | 15,106 | -7,164 | -75,594 | 209,121 |
| New Value Contribution | | | | | | | | | | | | | | | |
| Cumulative Cash Balance | | 280,046 | 252,938 | 289,218 | 260,056 | 240,218 | 563,570 | 559,704 | 556,749 | 556,004 | 556820 | 571,925 | 564,761 | 489,167 | |

**YEAR 3 FINANCIAL PROJECTIONS  CONSOLIDATED CELL-NIQUE**

| | | | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| Hudson River Foods | | | 21,218 | 21,218 | 21,218 | 53,045 | 53,045 | 53,045 | 53,045 | 53,045 | 53,045 | 53,045 | 53,045 | 53,045 | 541,059 |
| Ians CoMan | | | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 79,568 | 954,810 |
| CoManufacture | | | 371,315 | 424,360 | 424,360 | 424,360 | 318,270 | 371,315 | 371,315 | 371,315 | 371,315 | 371,315 | 371,315 | 371,315 | 4,561,870 |
| Dancing Deer | | | 21,218 | 53,045 | 53,045 | 79,568 | 795,675 | 53,045 | 53,045 | 53,045 | 53045 | 53,045 | 53,045 | 53,045 | 1,373,866 |
| Hodgson Mills | | | 8,487 | 9,548 | 10,609 | 11,670 | 12,731 | 15,914 | 18,035 | 20,157 | 22279 | 24,401 | 26,523 | 28,644 | 208,997 |
| Gross Sales | | | 501,806 | 587,739 | 588,800 | 648,210 | 1,259,288 | 572,886 | 575,008 | 577,130 | 579251 | 594,104 | 596,226 | 598,348 | 7,678,794 |
| Less discounts and allowances | | | -1,305 | -2,164 | -2,175 | -2,769 | -12,062 | -27,583 | -27,796 | -28,008 | -28,220 | -28,432 | -28,644 | -21,430 | -210,589 |
| Total Consolidated Cell-Nique Revenues | | | 500,501 | 585,574 | 586,625 | 645,441 | 1,247,226 | 545,303 | 547,212 | 549,122 | 551,031 | 565,672 | 567,582 | 576,917 | 7,468,206 |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Direct Cost of Product | | | 66,048 | 79,397 | 79,561 | 110,988 | 270,635 | 66,419 | 66,719 | 67,018 | 67,318 | 67,618 | 92,887 | 92,687 | 1,127,295 |
| Direct Labor & Burden | | | 156,060 | 156,060 | 156,060 | 171,666 | 182,070 | 166,464 | 166,464 | 166,464 | 166,464 | 166,464 | 166,464 | 166,464 | 1,987,164 |
| Rent is Settlement Pmt to NYBDC | | | 17,850 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 18,207 | 218,127 |
| Indirect Labor & Burden | | | 72,828 | 72,828 | 72,828 | 72,828 | 72,828 | 83,232 | 83,232 | 83,232 | 83,232 | 83,232 | 83,232 | 83,232 | 946,764 |
| Equipment Expense | | | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 37,454 |
| Janitorial & Utilities | | | 19,768 | 17,687 | 17,687 | 18,727 | 18,727 | 18,727 | 18,727 | 18,727 | 18,727 | 17,687 | 17,687 | 19,768 | 222,646 |
| Travel/Auto/Truck/Freight | | | 6,242 | 6,242 | 6,242 | 6,242 | 6,242 | 4,682 | 4,682 | 4,682 | 4,682 | 4,682 | 4,682 | 4,682 | 63,985 |
| Repairs & Maint | | | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 37,454 |
| Sales & Marketing | | | 12,485 | 36,414 | 36,414 | 36,414 | 36,414 | 14,566 | 14,566 | 14,566 | 14,566 | 14,566 | 14,566 | 14,566 | 260,100 |
| General & Administrative | | | 114,444 | 114,444 | 182,070 | 182,070 | 182,070 | 130,050 | 130,050 | 130,050 | 130,050 | 130,050 | 130,050 | 130,050 | 1,685,448 |
| Research & Development | | | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 3,641 | 43,697 |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | | | 475,609 | 511,163 | 578,953 | 627,026 | 797,077 | 512,231 | 512,530 | 512,830 | 513,129 | 512,389 | 537,658 | 539,539 | 6,630,134 |
| Consolidated Cell-Nique NOI | | | 24,892 | 74,412 | 7,671 | 18,415 | 450,148 | 33,072 | 34,682 | 36,292 | 37,902 | 53,283 | 29,924 | 37,378 | 838,072 |
| **Monthly Payments** | | | | | | | | | | | | | | | |
| | | | | | | | **** | | | | | | | | |
| Berkshire Bank | | | 14,954 | 14,954 | 14,954 | 14,954 | 14,954 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 265,267 |
| TD Bank | | | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 16,393 |
| Combined IRS Priority Unsecured | | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 24,862 |
| IRS Secured | | | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 13,707 |
| Combined NY Dept Tax Priority Unsecured | | | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 29,480 |
| SBA EIDL | | | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 15,333 |
| MCA Capital Assist | | | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 1,584 |
| MCA Parkside | | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,123 |
| MCA CFG | | | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 4,426 |
| UST | | | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 650 | 3,250 |
| Pawnee | | | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 24,813 |
| Dancing Dear | | | 28,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 192,000 | 250,000 |
| HMI/FOX | | | 208 | 208 | 208 | 208 | 208 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 15,545 |
| Reiser | | | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 24,503 |
| Unsecured | | | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 0 | 0 | 0 | 0 | 75,000 | 150,000 |
| | | | | | | | | | | | | | | | |
| Total Monthly Plan Payments | | | 56,749 | 31,099 | 31,099 | 31,749 | 106,099 | 45,506 | 46,156 | 45,506 | 45,506 | 46,156 | 45,506 | 310,156 | 841,285 |
| Combined Operating Expenses and Monthly Plan Payments | | | 532,357 | 542,261 | 610,052 | 658,775 | 903,176 | 557,737 | 558,686 | 558,336 | 558635 | 558,545 | 583,164 | 849,695 | 7,471,419 |
| Net Income After Opex/Lease  and Plan Payments | | | -31,856 | 43,313 | -23,427 | -13,334 | 344,050 | -12,434 | -11,474 | -9,214 | -7,604 | 7,127 | -15,582 | -272,778 | -3,214 |
| New Value Contribution | | | | | | | | | | | | | | | |
| Cumulative Cash Balance | | 489,167 | 457,310 | 500,623 | 477,196 | 463,862 | 807,912 | 795478 | 784,004 | 774,790 | 767186 | 774,313 | 758,731 | 485,953 | |

| YEAR 4 FINANCIAL PROJECTIONS CONSOLIDATED CELL-NIQUE | | | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| Hudson River Foods | | | 21,855 | 21,855 | 21,855 | 54,636 | 54,636 | 54,636 | 54,636 | 54,636 | 54,636 | 54,636 | 54,636 | 54,636 | 557,291 |
| Ians CoMan | | | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 81,955 | 983,454 |
| CoManufacture | | | 382,454 | 437,091 | 437,091 | 437,091 | 327,818 | 382,454 | 382,454 | 382,454 | 382,454 | 382,454 | 382,454 | 382,454 | 4,698,726 |
| Dancing Deer | | | 21,855 | 54,636 | 54,636 | 81,955 | 819,545 | 54,636 | 54,636 | 54,636 | 54636 | 54,636 | 54,636 | 54,636 | 1,415,081 |
| Hodgson Mills | | | 8,742 | 9,835 | 10,927 | 12,020 | 13,113 | 16,391 | 18,576 | 20,762 | 22,947 | 25,133 | 27,318 | 29,504 | 215,267 |
| Gross Sales | | | 516,860 | 605,371 | 606,463 | 667,656 | 1,297,067 | 590,073 | 592,258 | 594,443 | 596629 | 611,927 | 614,113 | 616,298 | 7,909,158 |
| Less discounts and allowances | | | -1,344 | -2,229 | -2,240 | -2,852 | -12,424 | -28,411 | -28,629 | -28,848 | -29,067 | -29,285 | -29,504 | -22,073 | -216,906 |
| Total Consolidated Cell-Nique Revenues | | | 515,516 | 603,142 | 604,223 | 664,804 | 1,284,643 | 561,662 | 563,629 | 565,595 | 567562 | 582,642 | 584,609 | 594,225 | 7,692,252 |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Direct Cost of Product | | | 67,369 | 80,985 | 81,153 | 113,208 | 276,048 | 67,748 | 68,053 | 68,359 | 68,664 | 68,970 | 94,745 | 94,541 | 1,149,841 |
| Direct Labor & Burden | | | 159,181 | 159,181 | 159,181 | 175,099 | 185,711 | 169,793 | 169,793 | 169,793 | 169,793 | 169,793 | 169,793 | 169,793 | 2,026,907 |
| Rent is Settlement Pmt to NYBDC | | | 18,207 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 18,571 | 222,490 |
| Indirect Labor & Burden | | | 74,285 | 74,285 | 74,285 | 74,285 | 74,285 | 84,897 | 84,897 | 84,897 | 84,897 | 84,897 | 84,897 | 84,897 | 965,699 |
| Equipment Expense | | | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 38,203 |
| Janitorial & Utilities | | | 20,163 | 18,041 | 18,041 | 19,102 | 19,102 | 19,102 | 19,102 | 19,102 | 19,102 | 18,041 | 18,041 | 20,163 | 227,099 |
| Travel/Auto/Truck/Freight | | | 6,367 | 6,367 | 6,367 | 6,367 | 6,367 | 4,775 | 4,775 | 4,775 | 4,775 | 4,775 | 4,775 | 4,775 | 65,264 |
| Repairs & Maint | | | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 38,203 |
| Sales & Marketing | | | 12,734 | 37,142 | 37,142 | 37,142 | 37,142 | 14,857 | 14,857 | 14,857 | 14,857 | 14,857 | 14,857 | 14,857 | 265,302 |
| General & Administrative | | | 116,733 | 116,733 | 185,711 | 185,711 | 185,711 | 132,651 | 132,651 | 132,651 | 132,651 | 132,651 | 132,651 | 132,651 | 1,719,157 |
| Research & Development | | | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 3,714 | 44,571 |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | | | 485,121 | 521,386 | 590,533 | 639,567 | 813,019 | 522,475 | 522,781 | 523,086 | 523,392 | 522,636 | 548,411 | 550,330 | 6,762,737 |
| Consolidated Cell-Nique NOI | | | 30,395 | 81,756 | 13,691 | 25,237 | 471,624 | 39,187 | 40,848 | 42,509 | 44,170 | 60,006 | 36,198 | 43,895 | 929,515 |
| | | | | | | | | | | | | | | | |
| **Monthly Payments** | | | | | | | | | | | | | | | |
| | | | ** | | | | | | | | | | | | |
| Berkshire Bank | | | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 326,570 |
| TD Bank | | | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 16,393 |
| Combined IRS Priority Unsecured | | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 24,862 |
| IRS Secured | | | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 13,707 |
| Combined NY Dept Tax Priority Unsecured | | | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 2,457 | 29,480 |
| SBA EIDL | | | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 16,750 |
|    MCA Capital Assist | | | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 1,584 |
|    MCA Parkside | | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,123 |
|    MCA CFG | | | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 4,426 |
| UST | | | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 650 | 3,250 |
|   Pawnee | | | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 24,813 |
|   Dancing Dear | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| HMI/FOX | | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 24,862 |
| Reiser | | | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 24,503 |
| Unsecured | | | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 0 | 0 | 0 | 0 | 75,000 | 150,000 |
| | | | | | | | | | | | | | | | |
| Total Monthly Plan Payments | | | 43,156 | 42,506 | 42,506 | 43,156 | 117,506 | 42,506 | 43,156 | 42,506 | 42,506 | 43,156 | 42,506 | 118,156 | 663,323 |
| Combined Operating Expenses and | | | | | | | | | | | | | | | |
| Monthly Plan Payments | | | 528,277 | 563,892 | 633,039 | 682,723 | 930,525 | 564,981 | 565,937 | 565,592 | 565898 | 565,792 | 590,917 | 668,486 | 7,426,059 |
| Net Income After Opex/Lease  and Plan Payments | | | -12,761 | 39,250 | -28,815 | -17,919 | 354,118 | -3,320 | -2,308 | 3 | 1,664 | 16,850 | -6,308 | -74,261 | 266,193 |
| New Value Contribution | | | | | | | | | | | | | | | |
| Cumulative Cash Balance | | 485,953 | 473,192 | 512,442 | 483627 | 465,708 | 819,826 | 816506 | 814,198 | 814,201 | 815865 | 832,715 | 826,407 | 752,146 | |

| YEAR 5 FINANCIAL PROJECTIONS CONSOLIDATED CELL-NIQUE | | | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 | Jul-30 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| Hudson River Foods | | | 22,510 | 22,510 | 22,510 | 56,275 | 56,275 | 56,275 | 56,275 | 56,275 | 56,275 | 56,275 | 56,275 | 56,275 | 574,009 |
| Ians CoMan | | | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 84,413 | 1,012,958 |
| CoManufacture | | | 393,928 | 450,204 | 450,204 | 450,204 | 337,653 | 393,928 | 393,928 | 393,928 | 393,928 | 393,928 | 393,928 | 393,928 | 4,839,688 |
| Dancing Deer | | | 22,510 | 56,275 | 56,275 | 84,413 | 844,132 | 56,275 | 56,275 | 56,275 | 56275 | 56,275 | 56,275 | 56,275 | 1,457,534 |
| Hodgson Mills | | | 9,004 | 10,130 | 11,255 | 12,381 | 13,506 | 16,883 | 19,134 | 21,385 | 23,636 | 25,887 | 28,138 | 30,389 | 221,725 |
| Gross Sales | | | 532,366 | 623,532 | 624,657 | 687,686 | 1,335,979 | 607,775 | 610,026 | 612,277 | 614528 | 630,285 | 632,536 | 634,787 | 8,146,433 |
| Less discounts and allowances | | | -1,384 | -2,296 | -2,307 | -2,938 | -12,797 | -29,263 | -29,488 | -29,713 | -29,939 | -30,164 | -30,389 | -22,735 | -223,413 |
| Total Consolidated Cell-Nique Revenues | | | 530,981 | 621,236 | 622,350 | 684,748 | 1,323,182 | 578,512 | 580,537 | 582,563 | 584589 | 600,121 | 602,147 | 612,052 | 7,923,019 |
| | | | | | | | | | | | | | | | |
| Direct Cost of Product | | | 68,716 | 82,604 | 82,776 | 115,472 | 281,569 | 69,102 | 69,414 | 69,726 | 70,038 | 70,349 | 96,640 | 96,432 | 1,172,838 |
| Direct Labor & Burden | | | 162,365 | 162,365 | 162,365 | 178,601 | 189,426 | 173,189 | 173,189 | 173,189 | 173,189 | 173,189 | 173,189 | 173,189 | 2,067,445 |
| Rent is Settlement Pmt to NYBDC | | | 18,571 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 18,943 | 226,939 |
| Indirect Labor & Burden | | | 75,770 | 75,770 | 75,770 | 75,770 | 75,770 | 86,595 | 86,595 | 86,595 | 86,595 | 86,595 | 86,595 | 86,595 | 985,013 |
| Equipment Expense | | | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 38,968 |
| Janitorial & Utilities | | | 20,566 | 18,401 | 18,401 | 19,484 | 19,484 | 19,484 | 19,484 | 19,484 | 19,484 | 18,401 | 18,401 | 20,566 | 231,640 |
| Travel/Auto/Truck/Freight | | | 6,495 | 6,495 | 6,495 | 6,495 | 6,495 | 4,871 | 4,871 | 4,871 | 4,871 | 4,871 | 4,871 | 4,871 | 66,570 |
| Repairs & Maint | | | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 38,968 |
| Sales & Marketing | | | 12,989 | 37,885 | 37,885 | 37,885 | 37,885 | 15,154 | 15,154 | 15,154 | 15,154 | 15,154 | 15,154 | 15,154 | 270,608 |
| General & Administrative | | | 119,068 | 119,068 | 189,426 | 189,426 | 189,426 | 135,304 | 135,304 | 135,304 | 135,304 | 135,304 | 135,304 | 135,304 | 1,753,540 |
| Research & Development | | | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 3,789 | 45,462 |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | | | 494,823 | 531,814 | 602,343 | 652,358 | 829,279 | 532,925 | 533,236 | 533,548 | 533,860 | 533,089 | 559,379 | 561,336 | 6,897,991 |
| | | | | | | | | | | | | | | | |
| Consolidated Cell-Nique NOI | | | 36,158 | 89,422 | 20,007 | 32,390 | 493,903 | 45,587 | 47,301 | 49,015 | 50,729 | 67,032 | 42,768 | 50,715 | 1,025,028 |
| | | | | | | | | | | | | | | | |
| **Monthly Payments** | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Berkshire Bank | | | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 27,214 | 326,570 |
| TD Bank | | | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 1,366 | 16,393 |
| **Combined IRS Priority Unsecured** | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IRS Secured | | | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 1,142 | 13,707 |
| **Combined NY Dept Tax Priority Unsecured** | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SBA EIDL | | | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 16,750 |
|    MCA Capital Assist | | | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 1,584 |
|    MCA Parkside | | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,123 |
|    MCA CFG | | | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 369 | 4,426 |
| UST | | | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 0 | 650 | 0 | 650 | 3,250 |
|    Pawnee | | | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 2,068 | 24,813 |
|    Dancing Dear | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| HMI/FOX | | | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 2,072 | 24,862 |
| Reiser | | | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 2,042 | 24,503 |
| Unsecured | | | 0 | 0 | 0 | 75,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 75,000 | 150,000 |
| | | | | | | | | | | | | | | | |
| Total Monthly Plan Payments | | | 38,628 | 37,978 | 37,978 | 38,628 | 112,978 | 37,978 | 38,628 | 37,978 | 37,978 | 38,628 | 37,978 | 113,628 | 608,980 |
| Combined Operating Expenses and Monthly Plan Payments | | | 533,451 | 569,791 | 640,321 | 690,986 | 942,257 | 570,902 | 571,864 | 571,526 | 571837 | 571,717 | 597,357 | 674,964 | 7,506,972 |
| Net Income After Opex/Lease  and Plan Payments | | | -2,469 | 51,445 | -17,971 | -6,237 | 380,925 | 7,609 | 8,674 | 11,038 | 12,752 | 28,405 | 4,790 | -62,912 | 416,048 |
| | | | | | | | | | | | | | | | |
| Cumulative Cash Balance | | 752,146 | 749,676 | 801,121 | 783150 | 776,913 | 1,157,838 | 1165447 | 1,174,121 | 1,185,159 | 1,197,911 | 1,226,315 | 1,231,106 | 1,168,193 | |

| Balloon Pmts Under the Plan | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Berkshire Bank | 2,180,904 | End of 60th Month | | | | | | | | |
| TD Bank | 67,823 | End of 60th Month | | | | | | | | |
| IRS Secured | 42,580 | End of 60th Month | | | | | | | | |
| SBA EIDL | 165,439 | End of 60th Month | | | | | | | | |
|    MCA Capital Assist | 31,671 | End of 60th Month | | | | | | | | |
|    MCA Parkside | 42,458 | End of 60th Month | | | | | | | | |
|    MCA CFG | 88,518 | End of 60th Month | | | | | | | | |
|    Dancing Dear | 192,000 | End of the 36th Month | | | | | | | | |
| HMI/FOX | 50,000 | End of 60th Month | | | | | | | | |
| NYBDC | 1,789,873 | End of 60th Month | | | | | | | | |
| TOTAL BALLOON PAYMENTS | 4,651,266 | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL PROJECTED CASH BALANCE | | | | | | | | | | |
| ON 60TH MONTH OF THE PLAN | 1,168,193 | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL PROJECTED | | | | | | | | | | |
| REFINANCE PROCEEDS FOR  REQ'D | | | | | | | | | | |
| TO PAYOFF OF SECURED CREDITORS | 3,483,073 | | | | | | | | | |

| Bank/Lender | Forced Liquidated Value | Est Mkt Value Assets | Bank/Lender | Claim | Estimated Recovery Under Ch-7 Liquidation | | |
|---|---|---|---|---|---|---|---|
| NYBDC | $48,677 | 486,772 | NYBDC | 2,182,000 | 2.23% | of Claim | Under a Chapter 7 Liquidation |
| Berkshire Bank *** | $88,097 | 880,973 | Berkshire Bank *** | 2,243,030 | 3.93% | of Claim | Under a Chapter 7 Liquidation |
| TD Bank | $5,000 | 50,000 | TD Bank | 112,596 | 4.44% | of Claim | Under a Chapter 7 Liquidation |
| SBA EIDL | $7,500 | 75,000 | SBA EIDL | 166,875 | 4.49% | of Claim | Under a Chapter 7 Liquidation |
| MCA Capital Assist | $0 | 0 | MCA Capital Assist | 31,671 | 0.00% | of Claim | Under a Chapter 7 Liquidation |
| MCA Capital Parkline | $0 | 0 | MCA Capital Parklin | 42,457 | 0.00% | of Claim | Under a Chapter 7 Liquidation |
| MCA CFG | $0 | 0 | MCA CFG | 88,518 | 0.00% | of Claim | Under a Chapter 7 Liquidation |
| Pawnee | $6,000 | 60,000 | Pawnee | 124,066 | 4.84% | of Claim | Under a Chapter 7 Liquidation |
| Dancing Deer | $75,000 | 350,000 | Dancing Deer | 4,850,000 | 1.55% | of Claim | Under a Chapter 7 Liquidation |
| HMI Fox | $5,000 | 50,000 | HMI Fox | 6,573,000 | 0.08% | of Claim | Under a Chapter 7 Liquidation |
| Reiser | $4,500 | 45,000 | Reiser | 91,888 | 4.90% | of Claim | Under a Chapter 7 Liquidation |
| **Cumulative Liquidated Value** | **$239,775** | | **Cumulative Lender** | **16,506,101** | | | |
| Less IRS Secured Claims | $46,786 | | **Unsecured Credito** | 11,050,000 | 0.00% | of Claim | Under a Chapter 7 Liquidation |
| Balance Available to Pay Claims Before Trustee | $192,989 | | | | | | |

**Trustee Fees Under Ch-7 Liquidation****

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25% | $25,000 | $6,250 | Bank/Lender | Claim | Estimated Recovery Under Ch-11 Plan | | |
| 10% | $25,000 | $2,500 | | | | | |
| 5% | $158,475 | $7,924 | NYBDC | 2,182,000 | 100.00% | of Claim | Under Chapter 11 Reorganization |
| 3% | $0 | $0 | Berkshire Bank *** | 2,243,030 | 100.00% | of Claim | Under Chapter 11 Reorganization |
| **Total Trustee Fees Ch-7 Liquidation**** | **$16,674** | | TD Bank | 112,596 | 100.00% | of Claim | Under Chapter 11 Reorganization |
| | | | SBA EIDL | 166,875 | 100.00% | of Claim | Under Chapter 11 Reorganization |
| ***Balance for Claims after Ch-7 Trustee Fees*** | ***$176,315*** | | MCA Capital Assist | 31,671 | 100.00% | of Claim | Under Chapter 11 Reorganization |

| | | | | | |
|---|---|---|---|---|---|
| **Less Administrative Claims (est)** | **$100,000** | MCA Capital Partin | 42,457 | 100.00% | of Claim   Under Chapter 11 Reorganization |
| **Balance for payment of Secured creditors und** | **$76,315** | MCA CFG | 88,518 | 100.00% | of Claim   Under Chapter 11 Reorganization |
| **Balance Available for Unsecured Creditors** | **$0** | Pawnee | 124,066 | 100.00% | of Claim   Under Chapter 11 Reorganization |
| **Balance Available for Undersecured Creditors** | **$0** | Dancing Deer | 4,850,000 | 7.22% | of Claim   Under Chapter 11 Reorganization |
| **Chapter 7 Trustee Fees | | HMI Fox | 6,573,000 | 0.76% | of Claim   Under Chapter 11 Reorganization |
| 25% of the initial $5,000 disbursed | | Reiser | 91,888 | 100.00% | of Claim   Under Chapter 11 Reorganization |
| 10% of anything between $5,001 and $50,000 | | | | | |
| 5% of anything between $50,001 and $1,000,000, and | | **Unsecured Credito** | **11,050,000** | **6.41%** | **of Claim   Under Chapter 11 Reorganization** |
| 3% of any amount over $1,000,000. | | | | | |